GLENN Z. WATTENBARGER *et ux. v.* J. R. TULLOCK *et al.*

*(Knoxville,* September Term, 1953.)

Opinion filed September 6, 1954.

On Petition to Rehear filed October 8, 1954.

Charles C. Guinn, of Etowah, for complainants-appellants.

Frank N. Bratton, of Athens, for defendants-appellees.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

This is a petition for certiorari and supersedeas issued on the fiat of Justice Burnett and a supersedeas bond in the amount of $500 was given.

By reason whereof a sale of land which had been ordered by the Chancellor was stayed. A brief recital of the essential facts is all that is necessary to dispose of the case. On the 22nd day of September 1951, Glenn Wattenbarger and wife, Myrtle Wattenbarger, sold and conveyed by deed to J. R. Tullock and wife, Eunice Tullock, their farm in McMinn County, consisting of about 140

acres. They did not retain an express vendor's lien, nor did they take at that time, a trust deed to secure the purchase price. On the same date Mr. and Mrs. Tullock borrowed $7,000 from the First National Bank at Athens, Tennessee, and secured the same with a first trust deed on the said land. On April 14, 1952, Mr. and Mrs. Tullock executed a series of notes and a deed of trust to secure the Wattenbargers for the balance of the purchase price of the land, said trust deed expressly stating that it was subject to the $7,000 mortgage due the First National Bank.

On February 5, 1953, the Wattenbargers filed this bill against Mr. and Mrs. Tullock, the First National Bank of Athens, and G. C. Graves, the trustee in the Bank's deed of trust. The substance of the bill is that complainants aver that they have received a payment of only a small amount on the series of notes, that the same are in default, they having exercised their option to declare all of said notes due by reason of said default. It is then averred that complainants do not know the exact balance which the Tullocks owed the Bank on the original $7,000 indebtedness, but it is averred that the Bank has collected $3,000 as the proceeds of a fire insurance policy on property that was destroyed, and has collected $600 from the sale of standing timber, and that the Bank's indebtedness should be credited with the amount of $3,600, so as to leave a balance of not more than $3,400 at the time of the filing of the bill; it is further averred that although requested to do so, the Bank has refused to make this credit; the complainants offered to pay the Bank $3,400 upon an assignment and delivery of the notes and trust deed to them; it is further alleged that the taxes are unpaid for 1952, and the farm is deteriorating in value for lack of attention, and that the Tullocks have left said farm and he has taken a job at Calhoun, Tennessee, and

that a dairy herd of 25 head of cattle has been removed by the Tullocks, and that there is no one looking after the farm.

The prayer of the bill is that the amount owing the Bank be decreed and that the complainants have a decree for the debt due them; that the Bank be required to enter proper credits and that an injunction be issued prohibiting the Bank from selling said farm or foreclosing under its first trust deed; that said lands described in the deed of trust, be sold by the Court upon a credit of not less than six months, nor more than twenty-four months and in bar of the equity of redemption, and that the proceeds of the sale be marshalled and that the balance of the debt due the Bank be paid first, and the debt due complainants be paid out of the balance; that a receiver be appointed to take charge of the farm, collect the rents and let the same be impounded in Court until proper adjudication of the case be made.

The Bank filed a demurrer, the substance of which need not be here stated, which was overruled with leave to rely on same along with the answer. A receiver was appointed and qualified by giving bond. The substance of the answer of the Bank and the trustee in their deed of trust is that the Bank is the owner and holder of the above mentioned $7,000 note, and that the same is past due and was past due and unpaid prior to the filing of the bill in this cause; that the trust deed securing same contained the standard mortgage clause in which the mortgagor contracted to keep the premises insured to the extent of $5,000 with the loss-payable-clause to the Bank; that the Tullocks are further indebted to the Bank in an original amount of $8,000 payable $300 a month, and that no part of this second indebtedness is past due and unpaid; that by reason of the destruction of the dwelling house on

said farm, and of certain furniture by fire, the insurance company paid Tullock $2,000 on the dwelling house and $1,000 on the furniture, making a total of $3,000, and that thereafter the check was duly endorsed by the Tullocks to the Bank, and that by agreement and consent of the Bank with the Tullocks, the sum of $2,265 was applied on the second indebtedness, which was secured by a chattel mortgage or trust deed on the personal property, which debt was at that time in arrears; the Bank avers that they had a right to so apply the proceeds of said insurance without the consent of the holder of the second mortgage on the farm, who are the complainants; the Bank denies that it received any of the proceeds from the sale of timber which they consented that the Tullocks should have; it is further averred that the complainants had no interest in the insurance and that the deed of trust given to complainants did not provide for any insurance; it is further denied that the complainants have any right to have said property sold by the Court because the Bank has a right to have the property sold through the trustee.

It appears from complainants' petition to rehear that the Chancellor first rendered an oral opinion, but in any event the petition to rehear was overruled and the Chancellor then made detailed findings of fact in which he sustained the claim of the Bank that they had a right to apply the insurance money as they had done, as well as the other contentions made by the defendant Bank; and finally, he made a finding that the original bill of complainants should be dismissed except so far as it seeks a personal judgment against the defendants Tullocks. In the mandatory part of the decree, however, the only thing which was decreed was the amount of the indebtedness due the complainants; that

"The Master will advertise and sell said land in the manner prescribed by law, subject to the indebtedness of J. R. Tullock and wife, Eunice Tullock, to First National Bank."

Further:

"It was agreed by counsel for all parties that should the Court hold that attorney's fees are allowable, then the Court was authorized to fix this amount at 15 percent of principal and interest;"

that complainants recover of the Tullocks all costs of the cause; that the receiver should file his report within 30 days after the entry of this decree, and providing that in the event of an appeal the receiver should continue to serve until the final determination of the cause.

It will be observed that although the complainants prayed for an injunction against the Bank, neither a temporary nor a permanent injunction issued. It did not fix the amount of the debt due the Bank, nor did it order the dismissal of the suit as to the Bank; nor did it order a sale of the property in accordance with the prayer of the bill, but as above stated, ordered it sold according to law. This last, of course, was a matter resting within the discretion of the Chancellor. Gibson's Suits in Chy., Sec. 624.

With the decree in this condition a very serious question is presented as to whether or not the suit has been dismissed as to the Bank. Gibson, supra, Sec. 566. Paragraph 5 states that the mandatory part of a decree and the title or style of the cause are the only absolutely essential parts of the decree. The mandates of a Court are its ultimate conclusions and final resolutions, all else in the decree except the style of the cause being merely preambles and inducements. The mandatory part of a decree is its vital and virile part, and contains the specific orders

and directions of the Court, and points out with clearness and emphasis what shall be done when, how, where, by whom, and to or for whom, etc. This will have direct bearing on what is said hereinafter.

The complainants prayed a discretionary appeal but the same was refused by the Chancellor.

In the assignments of error in the brief in support thereof, complainants have raised every question that would be raised on an ordinary appeal and the defendants have filed a lengthy reply brief and complainants have filed a lengthy supplemental brief. Complainants' first proposition in argument is that the suit having been dismissed as to the Bank, it was a final decree so far as the prayer of the bill was concerned. Hence, the prayer for appeal should have been granted. Complainants cite Code Section 9038; also *Wood* v. *Cooper,* 49 Tenn. 441, to the effect that it is competent for a party to appeal from that part of the decree with which he is not satisfied.

We think counsel is mistaken with reference to his conception of both contentions. A decree is not final under Code Section 9038 when a sale or an accounting or a partition, etc., is ordered. *Vineyard* v. *Vineyard,* 26 Tenn. App., 232, 239, 170 S. W. (2d) 917. Nor does the fact that the suit was dismissed as to the Bank make it a final decree that is appealable by the complainants. In *Isreal* v. *Guy,* 188 Tenn. 485, 486, 221 S. W. (2d) 525, it is said that it is well settled that an appeal as a matter of right lies only from a judgment which is final as to the *party appealing;* also, the rule is general that a judgment is not final which settles the case as to a part only of the defendants.

Now as to the right to certiorari and supersedeas under Code Section 8989, which provides as follows:

"The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy."

It is settled by the case of *State ex rel. McMorrow* v. *Hunt*, 137 Tenn. 243, 192 S. W. 931, that this supervisory or superintending writ may be granted in a proper case although the decree is not final. In the case of *Conners* v. *Knoxville,* 136 Tenn. 428, 189 S. W. 870, it is said:

" 'Certiorari' at common law performed the function of aid to a review and supervision of the proceedings of inferior boards and tribunals by a superior tribunal, not taking the place of appeal or writ of error, but bringing up the entire record in order to a determination whether there had been an absence or excess of jurisdiction, or a failure to proceed according to the essential requirements of the law." 136 Tenn. at page 432, 189 S. W. at page 871.

There is no contention that the Chancellor did not have jurisdiction of the subject matter and of the parties and, therefore, if the issuance of the writ in this case is to be sustained it must be done upon the theory that the action complained of was either in excess of his jurisdiction, or was illegal within the meaning of the statutory and common law rules above referred to as being applicable to the issuance of the writ. In the case of *State ex rel. Mc-Morrow* v. *Hunt,* supra, the Court had under consideration the meaning to be ascribed to the phrase "acting illegally" in the above statutory provision. In that connection the Court said [137 Tenn. 243, 192 S. W. 933] :

"Without undertaking to define that phrase of the statute with exactness or to say what it includes, we think it clear that the common-law writ, as distinguished from the statutory writ, or certiorari in lieu of appeal, may not be resorted to for the correction of technical or formal errors, not affecting jurisdiction or power, or for the correction of defects that are not radical, amounting to an illegality that is fundamental, as distinguished from an irregularity." See also, 10 Am. Jur., 524.

It becomes necessary, therefore, to determine whether the action of the Chancellor which might afford a basis for the issuance of the writ in this case can be so characterized. And this, of course, depends upon whether any right was denied petitioner, and if so, the nature of that right.

The gist of the complainant's petition for certiorari appears on page 8 of his brief, which we quote:

"The sale under the above order would compel complainants, if they bid, to recognize the full amount of $7,000 principal, with interest and 15 percent attorney's fees as a prior lien to the Bank; and the property would not bring anything like the amount of complainants' recovery of $6,026.38, the bidder knowing he would have to pay off the Bank over $8,000 or get nothing; and also knowing the Bank may have its trustee foreclose, or it may file another suit in Chancery to sell the lands described in the trust deeds and the answer. It would result in irreparable injury and damages to complainants, as all admit the common debtors, Tullocks, are insolvent and cannot pay their debts and complainants have no other security."

 If the above statements were absolutely correct in every detail, still we do not think it would serve as a basis for any action of this Court, because it does not meet the test of an illegality that is fundamental. In fact the identical situation has existed in innumerable cases throughout the history of the use of prior and junior deeds of trust. If the complainants should have to bid an amount equal to the entire amount of the first mortgage debt due the Bank, the money would be paid into the registry of the Court to await the final outcome of the case, including an appeal to any other Court, and if on appeal after final decree, the Appellate Court should decide that the Chancellor had committed an error of law and that the Bank is not due the amount adjudged by the Chancellor, then only the correct amount would be paid to the holder of the first mortgage and the balance would be paid to the holder of the second mortgage in partial or entire satisfaction of the debt due the junior mortgagee.

Any so-called recognition of the full amount of the first mortgage debt by the holder of the second mortgage by reason of the latter's bidding at the sale, would only be conditional or temporary, awaiting the final outcome of the case.

As a matter of fact the Chancellor by his order has directed that the sale be made subject to the first lien of the Bank so that, unless the Bank shall see fit to bid at the sale, the complainants could bid any amount from $1 up to the amount of complainants' debt without having to pay in any money to the registry of the Court in so far as the debt due the Bank is concerned, by-passing for the moment's consideration the question of the amount necessary to take care of Court costs. Then if the sale

to the second mortgagee was confirmed, the latter could make his own arrangements about satisfying the Bank.

So far as any danger of the Bank foreclosing its first mortgage through its trustee pending the outcome of this suit is concerned, we think the Bank would hesitate to do that without permission of the Court because of the danger of being held in contempt of Court. If the same should be attempted, the complainants would have a right to file a suit for a prohibitory injunction which the Court would undoubtedly grant under the circumstances. While it does appear from the record that the complainants have no other security, it does not appear from the record that the Tullocks are insolvent.

For the reasons stated, we are unable to see where complainants are in danger of irreparable injury.

While it is true that counsel on both sides have thoroughly briefed the contentions between them with reference to the merits of the case so that we might go ahead and pass on the questions that have been raised up to this point, but in doing so we would not necessarily settle all of the questions that might be raised after the final decree. No one can foresee what further questions may arise with reference to the manner of the sale, what may take place at the sale with reference to the bidding, the question of raised bids, etc. Therefore, to undertake to dispose of the case here as far as it has gone in the Court below, is simply to try the case piecemeal, and actually in principle, it is equivalent to using this supervisory writ, not as being supervisory but as certiorari in lieu of appeal.

We are, therefore, of opinion that after consideration of the record and briefs, the writs of certiorari and supersedeas should not have been granted in the first place. The same is dismissed and the cause is remanded to the

Chancery Court for further proceedings. The complainants will pay costs.

## On Petition to Rehear.

The petition to rehear filed by the complainants, Wattenbarger, in the second paragraph thereof states "the decision appears to be based upon the ruling that the decree of the Chancery Court was neither a final decree, nor an appealable interlocutory decree, nor one 'affecting the jurisdiction or power, amounting to an illegality that is fundamental, as distinguished from an irregularity' ".

With deference to petitioners' counsel the Court did not hold that it was not an appealable interlocutory decree. What the Court did hold was first, that it was not a final decree from which an appeal would lie as a matter of right, and secondly, that even though it is an interlocutory decree it was not a proper case for the allowance of certiorari and supersedeas, even though it be conceded for the sake of discussion that the petitioners' contention set out on page 8 of his brief, be absolutely correct in every detail including the alleged insolvency of the Tullocks. The opinion then attempts to demonstrate that the complainants were in no danger of irreparable injury. In doing so it appears that the Court was mistaken in stating that the record does not show that the Tullocks are insolvent. This does not, however, in our opinion, change the situation in any material aspect and we reaffirm what is said in the original opinion, with that exception, as to why the complainants are not in danger of irreparable injury.

In the petition to rehear it is asserted that:

"Petitioners do not disagree with the statements of the general rule and cases of partition and tort actions. However, it is said the suit at Bar is neither,

but is one to fix priority of lienors in the nature of a suit for exoneration of surety or for the release of security. Further, that the Court overlooked a well recognized exception to the general rule, viz.:—that where priority is sought but not definitely fixed by the Court in advance of a decree of sale of the lien property, it is an appealable decree; and it may be brought to a superior Court for correction, because it vitally affects the salableness of the lien property, and is 'fundamental,' affording grounds for writs of certiorari and supersedeas, if necessary, to correct the decree by definitely fixing the amount and order of priority in the proceeds of common lien property, especially where it definitely appears the common debtor is insolvent as admitted by the amended answer in this cause.''

The first case relied on by petitioner is *West* v. *Weaver,* 50 Tenn. 589.

This case merely holds that the Chancellor had a right in his discretion, to allow an appeal from an interlocutory decree or order, but not that it was appealable as a final decree. See analysis of this case in *Vineyard* v. *Vineyard,* 26 Tenn. App. 232, 170 S. W. (2d) 917, cited in the original opinion.

The statute very clearly gives the Chancellor a right to grant an appeal from an interlocutory order or decree and whether or not the Chancellor sees fit either to grant it or deny it, the Appellate Court will not interfere, unless it is shown that the Chancellor abused his discretion. In the instant case we do not think that he did abuse it.

Petitioner relies also on *Ponte* v. *Bethel,* 56 Tenn. 666. This case holds that the mortgage debtor had a right to show the correct balance due on his mortgage debt before

the property is ordered to be sold and that, while the answer of the defendant confessed a certain amount of usury and he was bound, therefore, by his answer, the complainant debtor nevertheless was entitled to show whether he was entitled to additional credit.

■ The instant case may be distinguished on two grounds. First, because the instant case was heard on bill and answer according to the statements in the briefs, and in that situation the complainant necessarily admitted the averments of the answer to be true as to the amount of the debt. Gibson's Suits in Chancery, Secs. 438-439.

Second, in the instant case it is not the Tullocks, the debtors, who are complaining, but it is the petitioners who are the second mortgagees. The original opinion has fully detailed the ways in which the second mortgagees may protect themselves and need not be here repeated.

The third case relied upon by petitioner is *Cockrill* v. *Peoples Savings Bank,* 155 Tenn. 342, 293 S. W. 996. The facts of that case are that the complainant's surety sought only to enjoin the defendant Bank, who was its principal on several fiduciary bonds the conditions of which had been breached by the Bank, from foreclosing the mortgage held by the Bank on the surety's property until the amount of the surety's liability on said bonds could be determined in order that the surety might have exoneration pro tanto by way of equitable set-off, the Bank being insolvent. That is to say, the surety was indebted to the Bank personally for which the Bank had security on the surety's property, whereas the insolvent Bank had breached several fiduciary bonds and this surety would be called on to pay the principal's liability and it was to adjust these mutual debts and to exonerate

the surety pro tanto that brought about the surety's suit to enjoin the foreclosure on the debt the surety personally owed the Bank.

The only relief sought was an injunction which was denied by the Court but the Chancellor retained the cause in Court so that the opinion states:

"A case is thus presented to us by the petitioner in which the Chancellor rendered a decree denying all relief sought by the complainant, final in fact, though not so on its face, and petitioner is without other remedy to review the proceedings below."

That is not the situation in the instant case, as reference to the original opinion will readily disclose.

We do not find any merit in the petition to rehear and the same is, accordingly, overruled.