MEDIC AMBULANCE SERVICE, INC., Chas. A. Davis, and
Union Railway Company, Petitioners,

*v.*

WESSON T. MCADAMS, Respondent.

392 S.W.2d 103.

(*Jackson,* April Term, 1965.)

Opinion filed May 7, 1965.

306

R. GRATTAN BROWN, JR., Memphis, of counsel, MONTE-
DONICO, BOONE, GILLAND, HEISKELL & LOCH, Memphis, for
respondent.

EWARD P. RUSSELL, Memphis, CANADA, RUSSELL & TUR-
NER, Memphis, of counsel, for petitioners.

MR. JUSTICE CHATTIN, delivered the opinion of the Court.

Wesson T. McAdams was injured in a collision between an ambulance owned and operated by an employee of Medic Ambulance Service, Inc., in which he was being transported to a hospital, and a switch engine of the Union Railway Company. The accident occurred on December 21, 1962, in Memphis, Tennessee.

The parties will hereinafter be referred to as plaintiff and defendants.

McAdams filed suit for personal injuries received in the collision against both the Ambulance Company and the Railway Company on May 21, 1963.

On May 11, 1964, by agreement of Counsel for the respective parties, the discovery deposition of G. D. Fleetwood was taken. He testified he was the claim agent for

the Union Railway Company and that he was notified of the accident by the Chief Clerk of the Railroad yards a few minutes after it occurred. As part of his duties, he went to the scene and made an investigation of the collision. He took statements from the members of the crew operating the engine in longhand. He also took photographs of the scene and made certain measurements. He testified he was unable to remember the names of the members of the crew; and that he had turned the statements over to Counsel for the Railway Company the next morning. He also delivered the photographs to Counsel after they were developed.

He testified Counsel had not asked him to make the investigation, but that his work in making investigations of claims and accidents was under the direct supervision of the defendant's legal department and he was required to file his reports with defendant's Counsel.

Counsel for McAdams then requested Counsel representing the Railway Company to turn over the material Fleetwood delivered to them for inspection. Counsel declined. Plaintiff's Counsel then stated the taking of the deposition would be suspended.

On May 26, 1964, Counsel for McAdams filed in the trial court a notice styled: ''Motion to require defendant, Union Railroad Company to produce documents.'' This notice was served upon Honorable Thomas R. Price, Counsel for the Railway Company, and also on all other Counsel of record in the case.

The notice recited the facts relative to the taking of Fleetwood's deposition on May 11, 1964, and the refusal of Counsel for the Railway Company to turn over to

Counsel for plaintiff the data gathered by Fleetwood at the scene of the accident.

The prayer of the notice was, "for an order of this court requiring defendant, Union Railway Company, to produce for inspection by Counsel for the plaintiff, Wesson T. McAdams, under Section 24-1201, et seq., of the Tennessee Code Annotated, the statements of each crew member of the engine or train, all photographs taken at the scene of the accident, and the official report prepared by G. D. Fleetwood, as Claim Agent, for the defendant, Union Railway Company."

The matter was heard by Judge Friel Hastings of Division VI of the Circuit Court of Shelby County on June 19, 1964. Judge Hastings entered the following order:

"This cause came on to be heard upon the written motion of the plaintiff, Wesson T. McAdams, heretofore filed, to require G. D. Fleetwood, Claim Agent of the defendant, Union Railway Company, to produce for inspection and copying certain statements, photographs and reports, upon argument of counsel, and upon the entire record in the cause, and it appearing that the motion is well taken in all respects;

It is, therefore, ordered that G. D. Fleetwood, Claim Agent of the defendant, Union Railway Company, produce on or before July 20, 1964, for inspection and copying by Counsel for the plaintiff, Wesson T. McAdams, all statements of each crew member of the train taken by defendant's Claim Agent, G. D. Fleetwood, all photographs taken by him at the scene of the accident, and any reports made to the defendant, Union Railway Company, and any data or information con-

taining measurements pertaining to the location of the accident and the particular vehicles involved, which were taken and prepared by defendant's said Claim Agent.

> Friel Hastings,
> · Judge
> June 19, 1964

APPROVED:

Entered June 19, 1964
Minute Book 6 Page 530

R. Grattan Brown, Jr.,
Attorney for Plaintiff

Braxton Gandy,
Attorney for Defendants,
Medic Ambulance Service, Inc.,
and Charles A. Davis.

---

Attorneys for Defendant,
Union Railway Company."

---

On July 13, 1964, Counsel for Fleetwood caused notice to be served upon Counsel for McAdams that they would apply to Judge Lois D. Bejach of the Court of Appeals at his office in Memphis on July 14, 1964, at three thirty o'clock, P.M., for an order superseding the order entered by Judge Hastings on June 19, 1964.

At the appointed time Counsel for Fleetwood presented to Judge Bejach a petition styled: "Petition of G. D. Fleetwood for writs of certiorari and supersedeas; assignment of error, brief and argument on behalf of petitioner."

The petition sets out the proceedings above detailed. It then alleges the material desired for inspection by Counsel for McAdams is not in petitioner's possession nor under his control, he being only an employee of the Railway Company; and, therefore, he is unable to comply with the order of the court, and there is no legal precedent for such an order in this state.

Judge Bejach refused to grant a fiat for certiorari but did grant a fiat to the Clerk of the Court of Appeals at Jackson for the issuance of a supersedeas "vacating and setting aside the order described and complained of in the within petition." The record shows Counsel for McAdams excepted to this action of Judge Bejach.

Accordingly, the petition for certiorari and supersedeas presented was filed with the Clerk of the Court of Appeals at Jackson together with Judge Bejach's fiat.

On September 14, 1964, Counsel for McAdams filed a motion in the Court of Appeals to vacate and set aside the supersedeas issued under the fiat of Judge Bejach.

On September 18, 1964, Counsel for Fleetwood filed a motion in the Court of Appeals for the writ of certiorari in order to bring up the record in the cause for consideration of his petition for certiorari and supersedeas by the entire court.

On September 29, 1964, Counsel for McAdams filed a reply brief to the foregoing motion.

The matter was then heard by the entire Court and in an opinion by Presiding Judge Avery and concurred in by Judge Carney, the writ of supersedeas issued by Judge Bejach was dissolved and the petition for the writs of

certiorari and supersedeas was denied. Judge Bejach dissented.

Fleetwood has filed a petition for certiorari in this Court, which we have granted. He states in the petition that the action of the Court of Appeals in dissolving the supersedeas issued by the order of Judge Bejach was legally sound. He complains, however, of the action of that Court in denying his petition for certiorari and supersedeas.

He assigns two assignments of error. The first assignment complains of the action of the Court of Appeals in denying his petition for writs of certiorari and supersedeas.

It is argued in support of this assignment that Fleetwood had stated during the taking of his deposition he did not have the investigation file but had turned it over to Counsel for the Railway Company; and, therefore, it was impossible for him to produce it. This argument is highly technical. Counsel are officers of the Court. Surely it would be their duty to produce the file rather than to deliberately force the Court to hold the witness in contempt as well, perhaps, as themselves; provided plaintiff was entitled to inspect and copy the file. We overrule the assignment.

The second assignment states the Court of Appeals was in error in finding the plaintiff was entitled to inspect and copy defendant's investigation file.

It is argued this was error because there is no legal precedent in this state, statutory or otherwise, whereby a plaintiff in an adversary proceeding can require a defendant or its employee to produce for purposes of a fishing expedition the defendant's investigation file.

With respect to this assignment, it is the insistence of plaintiff that procedural matters which address themselves to the discretion of the trial court do not case a party in final judgment and are not reviewable by certiorari unless such action is in the absence or excess of jurisdiction, arbitrary, unjust or capricious. *Ivey v. State,* 207 Tenn. 438, 340 S.W.2d 907 (1959); *McGee v. State,* 207 Tenn. 431, 340 S.W.2d 904 (1959); *Conners v. City of Knoxville,* 136 Tenn. 428, 189 S.W. 870, 871 (1916). And further the trial judge had jurisdiction of the subject matter, to construe the discovery law of 1959, and to enter the interlocutory order.

To resolve the question thus made, we must consider those sections of the discovery law of 1959 which we deem are pertinent. T.C.A. Section 24-1201 provides a trial court, after acquiring jurisdiction over a plaintiff, a defendant or property which is the subject of the suit may order the taking of any person's testimony upon notice for the purpose of discovery, or use as evidence, or any other use the court may order either on its own motion or upon the application of any party.

T.C.A. Section 24-1202 provides the attendance of such witnesses may be compelled in accordance with and required by existing law; that notice from one party to another of the suit to appear and testify; or, in the event the party from whom the deposition is sought is a corporation, notice to its Attorney of record to produce any of its officers whose testimony is to be taken; shall have the same effect as if a subpoena had been issued and served.

T.C.A. Section 24-1204 provides that the witness may be examined regarding any matter, not privileged, which is relative to the claim or defense of any party and the

existence and location of documents or other tangible things as well as the names, identity and location of persons having knowledge of relevant facts.

We here quote the pertinent part of T.C.A. Section 24-1205, which we think covers in part the problem we have under consideration:

"After notice is served for taking a deposition by oral examination, upon motion seasonably made by any party or by the person to be examined and upon notice and for good cause shown, * * * the court may make any other order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression, including an order that a party shall not be required to disclose names of witnesses or disclose or produce things pertaining to the litigation where the requesting party has not, in the discretion of the court, used diligence to discover such things for himself."

Likewise, we quote the pertinent part of T.C.A. Section 24-1206 because we think those provisions also are applicable to the situation we are considering:

"At any time during the taking of the deposition, on motion of any party or of the deponent and upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party, the court in which the action is pending * * * may order the officer conducting the examination to cease forthwith from taking the deposition, or may limit the scope and manner of the taking of the deposition as provided in sec. 24-1205. * * * Upon demand of the objecting party or deponent, the taking of the deposition shall be

suspended for the time necessary to make a motion for an order.''

T.C.A. Section 24-1218 provides that the discovery law of 1959 is cumulative to existing law with respect to depositions.

T.C.A. Section 24-1219 provides the discovery law of 1959 shall be construed in pari materia with existing laws relative to depositions.

▇▇▇ In construing the Act, we are governed by the following rules:

''(1) The legislative intent controls the construction of statutes. * * *

''(2) A statute should be construed as a whole, giving effect to each word. * * *

''(3) The Court in construing a statute should give it the construction which promotes the purpose and object of the Act. * * *

''(4) In ascertaining the intent and purpose of the legislature it is our duty to look to the caption of the Act.'' *Carter v. Jett,* 51 Tenn.App. 560, 370 S.W.2d 576 (1963).

Looking to the caption of the Act, we see its purpose is to authorize the taking, filing and use of depositions in courts of record, for the purposes of discovery; and to provide the means and manner of taking such depositions.

With respect to the statute it was said by this Court, in an opinion by Chief Justice Burnett, in *Ivey v. State,* supra:

''The statute in reference to discovery depositions is predicated upon the presumption that it may be

allowed by the trial judge. This, of course, means that it is a discretionary matter with the trial judge. What is meant by discretion?

"We think it means a sound discretion, exercised, not arbitrarily or wilfully, but with regard to what is right and just under the circumstances and the law, and directed by the trial judge's reason and conscience to a just result."

The deposition of Fleetwood was taken upon the agreement of Counsel for the respective parties. The order did not authorize the taking of the deposition of anyone; nor did it order the resumption of the taking of the deposition of the witness. The order was based upon the fact Fleetwood stated he had turned the file over to Counsel for the Railway Company and Counsel had refused to produce the file for inspection and copying.

If the trial court had authority to make the order under the circumstances, it is obvious that Sections 24-1205 and 24-1206 of T.C.A., set out the procedure to be followed by a party requesting such an order.

It is apparent Section 24-1206 provides that when a deposition is being taken, on demand of any party or deponent, the examination shall be suspended for the necessary time to make a motion in the proper trial court and upon a showing the examination is being conducted in bad faith, etc., the trial court may make an order terminating the examination or may limit the scope and manner of the taking of the deposition as provided in Section 24-1205 of the Act.

It is also apparent a trial judge, in whose court the action is pending, in his discretion, may, prior to the taking of a deposition, or on the resumption of the taking

of a deposition which has been suspended, upon motion of a party or deponent and "upon notice and for good cause shown," make an order requiring the adversary party to disclose names of witnesses or disclose or produce things pertaining to the litigation; but in the event he should find the requesting party has not used diligence to discover such things for himself he may, in his discretion, refuse to make such an order.

This record shows the trial judge made the order without any showing by plaintiff, or any requirement the plaintiff make a proper showing of the necessity for the production of the file and the material therein, or that the denial of the production of the material would result in hardship or injustice to him or that plaintiff had used diligence to discover the material sought.

The motion simply stated Fleetwood had made the investigation; that he had taken the statements of each member of the train crew and had made photographs and certain measurements at the scene of the accident. And when Counsel asked him to deliver the file to them he stated he had delivered the file to Counsel for the Railway Company and did not have it in his possession. Plaintiff's Counsel then requested defendant's Counsel to produce the file which was declined. The examination was thereupon suspended.

There is no showing Counsel made a request to defendant's Counsel for the names and location of the witnesses or any specific thing or things for inspection. But, instead, requested the entire file which contained the official report of the claim agent and the statements of defendant's witnesses. Neither is there any showing the witnesses and the other material, the measurements and photographs, were not equally available to plaintiff.

It is true Fleetwood made the investigation as a part of his duties as the claim agent for the Railway Company and not at the request of Counsel or under Counsel's direct supervision. He stated, however, his employment required him to make investigations of claims and accidents and report his findings to the legal department of defendant.

■■ The policy of the law in protecting against the discovery and inspection of the work product of a party extends to statements and reports made by that party's employees or agents, where made in anticipation of, or preparation for, litigation. But upon a proper showing of good cause, undue hardship or injustice, a discovery and inspection of such statements and reports may be allowed. 27 C.J.S. Discovery sec. 72, page 229, and cases cited therein. 17 Am.Jur., Discovery and Inspection, Section 28, pages 31, 32, 33, and cases there cited.

"Written statements secured from witnesses are the work product of the parties obtaining them, and a party should not be required prior to trial to turn them over to his opponent, although, under some circumstances a party may be required to do so, as where the denial of the production of such documents would unfairly prejudice or cause undue hardship to the party seeking such production." 27 C.J.S. Discovery sec. 72, page 230.

In the case of *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), the Court said:

"[T]he general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on

the one who would invade that privacy to establish adequate reasons to justify a production through a subpoena or court order.''

■ As stated, we are required to construe this statute in pari materia with existing laws on the subject matter of depositions, and any deficiencies herein shall be supplied by existing law on the same or similar subject.

T.C.A. Section 24-1101, our discovery at law statute, provides:

''Either party to a suit at law is entitled to a discovery from the other party of any matters material to the issue of such suit, in all cases where the same party would, by the rules of equity, be entitled to a discovery in aid of such suit.''

Such a bill must set out the facts of the controversy; show why and wherein the discovery is necessary, detailing the facts; that the matters called for are proper subjects of a discovery; that they are not privileged, or are not exempt within any other doctrine; and that they belong to the complainant's case, and not to the defendant. The bill must be sworn to. Gibson's Suits in Chancery, 5th Ed., Sections 1186, 1187, 1188.

■ It is our opinion the Act requires a party seeking to discover the investigation file or any of its parts which are the work product of the adversary party or his Attorney must show good cause for the discovery; and that the party has used diligence to discover for himself those things which he seeks to have the adversary party produce for inspection and copying. We are of the further opinion a mere allegation that good cause exists is not enough. We think there must be a factual statement, not merely conclusions, as to the need for the data or material

for the purposes of the trial, and the motion should be supported by proper affidavit.

Thus, we are of the opinion the order, as entered, under the circumstances, transcends the sphere of discovery and contravenes our policy of an orderly procedure in the prosecution of claims in the courts.

We concede the order of the trial court was not a final one as insisted by plaintiff, but we think it is subject to review by the appellate courts on petition for the writ of certiorari.

" 'Certiorari' at common law performed the function of aid to a review and supervision of the proceedings of inferior boards and tribunals by a superior tribunal, not taking the place of appeal or writ of error, but bringing up the entire record in order to a determination whether there had been an absence or excess of jurisdiction, or a failure to proceed according to the essential requirements of the law." *Conners v. City of Knoxville,* 136 Tenn. 428, 189 S.W. 870 (1916).

As said in the case of *Taylor v. Continental Tenn. Lines,* 204 Tenn. 556, 322 S.W.2d 425 (1959) :

"We have repeatedly held that it is error to grant a discretionary appeal in a court of law; and appeals to this Court in such cases are dismissed as being premature. However, in a proper case errors complained of in a judgment not final in form or substance, is subject to review by the appellate courts upon a petition for the writ certiorari."

In the case of *Wattenbarger v. Tullock,* 197 Tenn. 279, 271 S.W.2d 628 (1954), this Court said:

"It is settled by the case of *State ex rel. McMorrow v. Hunt,* 137 Tenn. 243, 192 S.W. 931 (1916), that this supervisory or superintending writ may be granted in a proper case although the decree is not final."

We think the error here complained of amounted to an illegality which is fundamental, as distinguished from an irregularity, a technical or formal error not affecting jurisdiction or power; and, although not a final order or judgment, is, nevertheless, reviewable by the common law writ of certiorari. *State ex rel. McMorrow v. Hunt,* supra.

Although, the order states, "this cause came on to be heard upon the written motion of the plaintiff, Wesson T. McAdams, heretofore filed, to require G. D. Fleetwood, Claim Agent of the defendant, Union Railway Company, to produce for inspection and copying," the entire investigation file of the defendant, Union Railway; we do not think the record supports this statement.

There is no showing in the record that any notice whatever was given to Fleetwood to appear at the hearing of the motion. The motion was directed solely to the Union Railway Company and served upon its Counsel, which, of course, was not notice to Fleetwood. Nor are we able to find a subpoena for his appearance at the hearing in the record. It cannot be said he waived notice because of the presence of the defendant's Counsel. They were there representing the Railway Company. Fleetwood was not involved until the order directing him to deliver the file was granted. Hence, the trial court did not have jurisdiction of the person of Fleetwood. Although this matter had been overlooked by Counsel; we may, in our discretion, notice such error. Rule 15, Rules of the Supreme Court.

■ We conclude the trial judge acted arbitrarily in entering the order without a showing of good cause for the production of the investigation file or any diligence on the part of plaintiff in discovering for himself the material sought for inspection and copying; and in the absence of jurisdiction of the person of Fleetwood at the time the order was made.

The judgment of the Court of Appeals is reversed. The Clerk of this Court is directed to file the petition, the transcript, and briefs; and an order will be entered granting the writs of certiorari and supersedeas, reversing and superseding the order complained of, adjudging the costs incident to the petition against respondent, Wesson T. McAdams, and remanding the cause to the Circuit Court of Shelby County for further proceedings consistent with this opinion.

■ We observe, however, this opinion does not prejudice the right of plaintiff to further pursue the matter within the bounds and limitations of the Discovery Law of 1959.

BURNETT, CHIEF JUSTICE, and WHITE and HOLMES, JUSTICES, concur.

DYER, JUSTICE, dissents.