Edward L. LUTZ, Plaintiff,

v.

**JOHN BOUCHARD AND SONS COMPANY, INC., Rex Beeler, Individually and d/b/a Tennessee Boiler Company, Defendants.**

Court of Appeals of Tennessee, Middle Section.

April 26, 1974.

Harold D. Hardin and Seth W. Norman, Nashville, for plaintiff.

S. McPheeters Glasgow, Jr., Nashville, for defendant.

## OPINION

TODD, Judge.

The defendant, Rex Beeler, individually and d/b/a Tennessee Boiler Company, has filed in this Court a petition for the writs of certiorari and supersedeas seeking relief from an order of the Trial Judge requiring that the deposition of Dr. Donald Kinser be taken by the plaintiff.

This is a suit for personal injuries sustained by plaintiff, an employee of Hamilton National Bank, as a result of the explosion of a mechanical device being used by defendants in repair work on the premises of said bank. The complaint alleges dangerous propensities of said machine, failure to discover and warn of same, and relies upon the doctrine of res ipsa loquitur.

One of the defendants, John Bouchard and Sons Company, Inc., has heretofore been dismissed by summary judgment, leaving only the defendant, Rex Beeler, individually and d/b/a Tennessee Boiler Company, before the Court.

On October 16, 1973, plaintiff gave notice to defendant of the taking of the deposition of Dr. Donald Kinser on November 1, 1973.

On the same date, plaintiff also gave notice of taking the deposition of the same witness on November 6, 1973.

On October 19, 1973, defendant filed a motion to quash the notice for deposition of Dr. Kinser on the following grounds:

"Pursuant to the orders of this Court, the defendant turned over to plaintiff's counsel the metal fingers from the turbine machine involved in this case in order that plaintiff, and/or his expert, might examine, inspect or test said objects, with the stipulation that the objects should not be physically altered and thereafter plaintiff's attorney took the objects to Dr. Donald L. Kinser, a metallurgist who had been employed as an expert by the defendant, and requested an examination and opinion, which was declined for the reason that said person had previously been employed by the defendant as an expert to examine said objects, and his findings of fact and opinion were privileged and not available to the plaintiff or his attorney, and now the plaintiff's attorney has given notice that the deposition of Dr. Donald L. Kinser will be taken on November 6, 1973, without the consent of Dr. Donald L. Kinser, or the defendant who employed him."

In support of said motion to quash, defendant filed the affidavit of its attorney to the effect that Dr. Donald L. Kinser had been previously employed by defendant to inspect the parts of the broken machine and give his opinion concerning same; that said services have been rendered; that plaintiff has not made reasonable effort to secure the services of another expert and is attempting to establish and prove his case at the expense of defendant.

Plaintiff filed the affidavit of his attorney that he had previously used the services of Dr. Kinser and his associates in other cases; that he (plaintiff's attorney) had great respect for the integrity and ability of Dr. Kinser and his associates; that he had offered to pay defendant one-half of the cost of employment of Dr. Kinser in return for access to his findings in which event "it might not be necessary" to hire another expert; that said offer was refused; that the nearest qualified expert was in Atlanta, Georgia; and that plaintiff had agreed to pay the witness $100.00 to give the proposed deposition.

On November 12, 1973, the motion to quash was set for hearing; there was no appearance for the plaintiff; and the motion was sustained. Thereafter, on November 14, 1973, the previous action of the Court was superseded by an order requiring that the deposition be taken on December 5, 1973.

The last mentioned order is the subject of the present petition for certiorari and supersedeas.

The plaintiff has filed in this Court a "Motion to Dismiss" on the following grounds:

"1. The petition shows on its face that it is an appeal from a purely interlocutory matter.

2. The brief of law filed by the defendant in support of the petition erroneously states the applicable law.

3. Assuming arguendo that Tennessee has adopted the old minority cases cited by the defendant, the ruling of the trial court would still involve a matter of discretion and fact finding and should not be disturbed by piece-meal, interlocutory appeal."

In *Medic Ambulance Service, Inc., et al. v. McAdams,* 216 Tenn. 304, 392 S.W.2d 103 (1965), the Supreme Court said:

"[10] We concede the order of the trial court was not a final one as insisted by plaintiff, but we think it is subject to review by the appellate courts on petition for the writ of certiorari.

' "Certiorari" at common law performed the function of aid to a review and supervision of the proceedings of inferior boards and tribunals by a superior tribunal, not taking the place of appeal or writ of error, but bringing up the entire record in order to a determination wheth-

er there had been an absence or excess of jurisdiction, or a failure to proceed according to the essential requirements of the law.' *Conners v. City of Knoxville,* 136 Tenn. 428, 189 S.W. 870 (1916).

"As said in the case of *Taylor v. Continental Tenn. Lines,* 204 Tenn. 556, 322 S.W.2d 425 (1959):

'We have repeatedly held that it is error to grant a discretionary appeal in a court of law; and appeals to this Court in such cases are dismissed as being premature. However, in a proper case errors complained of in a judgment not final in form or substance, is subject to review by the appellate courts upon a petition for the writ certiorari.'

"In the case of *Wattenbarger v. Tullock,* 197 Tenn. 279, 271 S.W.2d 628 (1954), this Court said:

'It is settled by the case of *State ex rel. McMorrow v. Hunt,* 137 Tenn. 243, 192 S.W. 931 (1916), that this supervisory or superintending writ may be granted in a proper case although the decree is not final.'

"We think the error here complained of amounted to an illegality which is fundamental, as distinguished from an irregularity, a technical or formal error not affecting jurisdiction or power; and, although not a final order or judgment, is, nevertheless, reviewable by the common law writ of certiorari. *State ex rel. McMorrow v. Hunt,* supra." 216 Tenn., pp. 320, 321, 392 S.W.2d at 111.

The foregoing disposes of grounds 1 and 3 of the motion to dismiss.

Ground 2 of the motion to dismiss is addressed to the merits of the petition which will be discussed hereafter.

The Motion to Dismiss is respectfully overruled.

■ As to the merits of the petition for certiorari, the facts are undisputed. The defendant had previously contracted with Dr. Donald Kinzer to examine the broken parts of the subject machine and to render his expert opinion thereon. Dr. Kinzer had made such examination; but, so far as the

record shows, had rendered no formal, written report to defendant.

After obtaining possession of the said broken parts, plaintiff sought to engage the services of an associate of Dr. Kinzer who declined to serve because of the previous activities of Dr. Kinzer. Both Dr. Kinzer and his associate are associated with Vanderbilt University in Nashville. The nearest qualified alternate expert is in Atlanta, Georgia. The broken parts are not large. They are derived from a power tool which is held in the operator's hands. They may be carried or transported without difficulty or inconvenience.

Upon these facts, plaintiff insists that he is entitled to take the discovery deposition of the defendant's employed expert, Dr. Kinzer.

At the present, the taking of discovery depositions is governed by Rules 26 et seq., Rules of Civil Procedure. Rule 26.01 provides in part:

"*26.01. When depositions may be taken.—*

Any party may take the testimony of any person, including a party, by deposition upon oral examination or written interrogatories for the purpose of discovery or for use as evidence in the action or for both purposes. . . ."

Rule 26.02 provides:

"*26.02. Scope of examination.—*

Unless otherwise ordered by the court as provided in Rule 30, the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."

Rule 30.02 provides:

*"30.02. Orders for the protection of parties and deponents.—*

After notice is served for taking a deposition by oral examination, upon motion seasonably made by any party or by the person to be examined and upon notice and for good cause shown, the court in which the action is pending may make an order that the deposition shall not be taken, or that it may be taken only at some designated place other than that stated in the notice, or that it may be taken only on written interrogatories, or that certain matters shall not be inquired into, or that the scope of the examination shall be limited to certain matters, or that the examination shall be held with no one present except the parties to the action and their officers or counsel, or that after being sealed the deposition shall be opened only by order of the court, *or that secret processes, developments, or research need not be disclosed, or that the parties shall simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court*; or the court may make any other order which justice requires to *protect the party or witness from* annoyance, embarrassment or *oppression*, including an order that a party shall not be required to disclose the names of witnesses or disclose or produce things pertaining to the litigation *where the requesting party has not, in the opinion of the court, used diligence to discover such things for himself."* (emphasis supplied)

The Rules of Civil Procedure follow the general pattern of the Deposition Law of 1959 with certain modifications which are immaterial to the issues herein. Therefore, decisions under the former law are of considerable assistance in applying the Rules of Civil Procedure to the present case.

*Medic Ambulance Service, Inc., et al. v. McAdams*, supra, was concerned with the discovery of the entire investigatory file of defendant, however the Supreme Court said:

"[9] It is our opinion the Act requires a party seeking to discover the investigation file or any of its parts which are the work product of the adversary party or his Attorney must show good cause for the discovery; and that the party has used diligence to discover for himself those things which he seeks to have the adversary party produce for inspection and copying. We are of the further opinion a mere allegation that good cause exists is not enough. We think there must be a factual statement, not merely conclusions, as to the need for the data or material for the purposes of the trial, and the motion should be supported by proper affidavit.

.    .    .    .    .

"[14] We conclude the trial judge acted arbitrarily in entering the order without a showing of good cause for the production of the investigation file or any diligence on the part of plaintiff in discovering for himself the material sought for inspection and copying; .  .  .

.    .    .    .    .

"[15] We observe, however, this opinion does not prejudice the right of plaintiff to further pursue the matter within the bounds and limitations of the Discovery Law of 1959." 216 Tenn., pp. 319, 320, 322, 392 S.W.2d p. 110

In *State of Tenn. ex rel. Pack, Commissioner v. West Tennessee Distributing Company*, 58 Tenn.App. 306, 430 S.W.2d 355 (1968) this Court denied discovery of appraisal reports in a condemnation case, but said:

"Trial courts have sufficient power, T.C.A. sec. 24–1205, and may be trusted to so exercise their discretion as to prevent a party who sits idle while his opponent through energetic actions brings to light pertinent evidence from gaining access to his opponent's files to supply the information he needs. .  .  ."

In 86 A.L.R.2d at page 129 is reproduced in full the opinion in the case of *Grand Lake Drive In, Inc., et al. v. Superior Court*, 179 Cal.App.2d 122, 3 Cal.Rptr. 621 (1960)

wherein the plaintiff sought the discovery deposition of an engineer who had made inspections and tests upon the sidewalk where plaintiff was injured. The California Court said:

"There is merit, however, in defendant's contention that fairness requires a showing of good cause as a condition to exercise of the power of the court to require pre-trial disclosure of the observations and conclusions of an independent expert engaged by a party as part of his preparation for trial, after occurrence of the event sued upon, to examine and reach conclusions upon an object in issue.

.    .    .    .    .

"However, under the broadest statement of its purposes, pre-trial discovery is subject to some limitations. *Hickman v. Taylor*, supra, 329 U.S. [495,] at pages 507–508, 67 S.Ct. 385, 91 L.Ed. 460. One such limitation seems reasonably to be drawn along the line distinguishing fact from opinion. The statute contemplates broad discovery of facts directly relating to the event or transaction in issue. But a somewhat different classification may well be assigned to the testimony of an independent expert engaged after the event or transaction to form an opinion upon some feature of it (see 4 Moore's Federal Practice, 2d ed., p. 1157). While such an expert normally is engaged with the idea that he will be called as a witness, he also serves, in most cases, as an adviser to counsel in determining upon an approach to the features of the case involving expert opinion, and these in turn indicate approach, emphasis, and legal theories for the case as a whole. Further, pre-trial investigation of the opinions of an opponent's experts may tend to encourage a contest of successive employment of experts, each to report or elaborate upon some element of the opinion expressed by the last. Such a contest, with its financial burdens, could well amount to the 'oppression' which the statute proscribes (Code Civ.Proc. §§ 2019(b)(1), 2030(b). And limitless pre-trial investigation of the views of oppos-

ing experts might well defeat the expedition of trial, which is one objective of discovery. The possible evils of unrestricted discovery of experts' views in cases turning largely upon expert testimony, such as condemnation, have been recognized. .    .    . We hold here that the refusal of an independent expert to answer is justified unless the party seeking to compel his answer shows good cause therefor. .    .    .

.    .    .    .    .

"In the infinite variety of circumstances which may arise in the course of human activity, as revealed in the complexities of litigation, many other factors may, collectively or individually, justify inquiry into the acts and thoughts of the independent expert. We do not attempt here to foresee and to detail them. Rather, we leave them to determination as they arise. Such determination will be facilitated by the exercise of a sound discretion in the trial courts in balancing the values of mutual pre-trial knowledge of the relevant facts against the elements of 'annoyance, expense, embarrassment or oppression' (Code Civ.Proc. §§ 2030(b), 2019(b)(1).

"To avoid confusion in the trial courts, we specifically disclaim any intention to place major emphasis upon an offer of the questioning party to pay all or a part of the fee or costs of the opponent's expert. References to this factor in some federal cases (see 4 Moore, supra, p. 1158) might, in the absence of this disclaimer, mislead bench and bar. Overemphasis upon the feature of cost could lead to an inappropriate air of barter. Conceivably, situations may arise in which fee and expenses of the expert could be a factor having some bearing upon the issue of good cause. Save in unusual cases, however, those items should not be given weight.

.    .    .    .    .

"The matter is remanded with instructions to the trial court to determine the issue of good cause upon the evidence now before it and such other evidence as

may be offered, and to enter its order upon plaintiff's motion in accordance with that determination." 179 Cal. App.2d, p. 129, 3 Cal.Rptr., p. 627, 86 A.L.R.2d, pp. 135, 136, 137, 138

Reliance is placed upon Federal Decisions on the ground of similarity between Federal Rules and our own Rules of Civil Procedure. However, the similarity is not close in respect to discovery of testimony of adversary's expert. Our own rules make no specific provision for such discovery, whereas the Federal Rules provide:

"(4) *Trial Preparation: Experts.* Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

"(A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision (b)(4)(C) of this rule, concerning fees and expenses as the court may deem appropriate.

"(B) A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." 4 Moore's Federal Practice, R 26

It does appear, however, that the Federal Rules recognize the "rule of fairness" referred to in *Grand Lake Drive In v. Superior Court,* supra.

In 86 A.L.R.2d at 140 there is a comprehensive annotation of authorities on discovery of expert testimony. In each of said cases, the Court sought to reach a fair conclusion, giving weight to all of the various material considerations such as fairness to the party employing the expert, the urgency of the need of his testimony, the alternate sources of the same information, the needs and rights of the adjudicating court, and the overall effect upon the trend of discovery practice.

In the present case, this Court does not consider that the facts presented heretofore are sufficient grounds for granting the exceptional relief of seizing by subpoena the fruits of diligence and expenditure of money by the defendant. There is no showing of any particular difficulty in sending the broken parts to Atlanta, Georgia for examination.

Plaintiff cites *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 460 (1947), but concedes that said authority was concerned with the contents of a lawyer's file under the "work product" doctrine.

Plaintiff concedes that discovery from opponent's expert is not ordinarily allowed where experts are plentiful and the same information is available from other experts.

Plaintiff cites *Sachs v. Aluminum Co. of America* (1948, C.A. 6 Ohio), 167 F.2d 570, however that case involved factual information derived from x ray examination and tests, and did not include expert opinion in the strict sense of requiring the further exercise of or communication of expert knowledge. Furthermore, *Sachs* was a contempt proceeding for refusing to answer, rather than a proceeding, such as this, to determine in advance what is discoverable. Also, *Sachs* was based upon the Federal Rules which specifically provide for discovery from experts, whereas our own Tennessee Rules make no such specific provision.

Plaintiff also cites *Bergstrom Paper Co.* (1947 D.C.Wis.), 7 F.R.D. 548, however that case also arose under the Federal Rules and

further rested in part upon prior stipulation and waiver of objection.

Plaintiff also cites *United States v. Meyer*, (C.A. 9 1968) 398 F.2d 66, however that was a condemnation case. As previously observed, this Court has already spoken on the subject of discovery from appraisers in condemnation cases. Moreover the cited authority rests upon the Federal Rules, which differ from the Tennessee Rules, and upon a report of a Federal Judicial Conference Committee which is not recognized as an authority by Tennessee courts.

In *Sanford Construction Co. v. Kaiser Aluminum & Chemical Sales, Inc.* (E.D.Ky. 1968), 45 F.R.D. 465, cited by plaintiff, defendant was allowed to discover the reports of experts in regard to examination of aluminum pipe where the facts were no longer available to defendant or its experts. This was a classic example of "good cause" for making an exception to the general rule.

Plaintiff cites *Henlopen Hotel Corp. v. Aetna Insurance Co.* (D.Delaware 1963), 33 F.R.D. 306 wherein the roof damage which had been examined by experts was no longer available for examination by other experts.

In *Hoagland v. Tennessee Valley Authority* (E.D.Tenn.1963), 34 F.R.D. 458, the Court allowed plaintiff to inspect a written report of defendant's safety engineer, but declined to allow examination of written reports prepared by and containing conclusions of an expert metallurgist. The Court said:

"[3] The majority of the district courts have held that conclusions of experts are not discoverable. *Maginnis v. Westinghouse Electric Corp.*, D.C., 207 F.Supp. 739, 740.

"The Sixth Circuit held in the case of *Sachs v. Aluminum Co. of America*, 167 F.2d 570, that an expert in X-ray metallography, who was engaged by counsel in a patent case to make tests and X-ray photographs of samples of metal furnished him, could not refuse to answer questions propounded to him by counsel for the other party while giving a deposition relating to information obtained by the tests on the ground that it fell within the 'attorney-client privilege.'

"The question as to whether experts are required to give their conclusions appear to have not been made in that case, and the decision does not solve the problem under consideration.

"Professor Moore states the rule governing discovery of opinions of experts as follows:

'The court should not ordinarily permit one party to examine an expert engaged by the adverse party, or to inspect reports prepared by such expert, in the absence of a showing that the facts or the information sought are necessary for the moving party's preparation for trial and cannot be obtained by the moving party's independent investigation or research.' 4 Moore, Federal Practice § 26.24, (2d Ed. 1950), p. 1531." 34 F.R.D., 460, 461

Certain principles of fairness should govern the allowance of discovery by one party of the testimony of experts employed by adversary party. Among these are:

1. *Initially* each party should be required to pursue his investigation independently and with due diligence, including the employment and use of experts.

2. *Initially*, neither party should be permitted to obtain by discovery the factual information accumulated by the investigation of adversary's experts nor to obtain the benefit of any skill or expertise of such experts.

3. If the factual information is no longer available for presentation to other experts for their opinion, then the discovery of factual information in the hands of adversary's experts should be allowed in order to enable other experts to form their opinions upon the same facts.

4. If one party has employed the only available expert, this should not deprive the court of the benefit of his testimony. In such event, such an expert should be declared the witness of the court, and his compensation should be borne equally by the parties or taxed as part of the costs.

5. After both parties have completed their investigation through experts, then each party is entitled to reasonable notice of the nature and tenor of the testimony to be expected from the experts of his adversary. Whether such notice would be best given by exchanging copies of experts' reports or by discovery depositions, or otherwise, is to be determined by the parties and the discretion of the Trial Judge under proper limitations and safeguards.

6. The facts observed by an expert do, indeed, constitute factual evidence which should be discoverable under the foregoing principles.

7. The conclusions which such an expert has reached and expects to announce in his testimony should be discoverable under the foregoing principles, if said expert will testify. If not, there would be no reason for discovery of his opinion.

8. Discovery should not be allowed of the scientific theories and mental processes employed by an expert in reaching his conclusions unless there is a joint disclosure of such information by both parties and such advance disclosure appears necessary to the proper cross examination and rebuttal of the witness.

9. Discovery should not be made an instrument for "picking the brain" of an expert, deriving from him information as to skills, processes and theories which might be transmitted to another expert for his edification and use in his investigation.

Applying the foregoing principles of fairness to the present case, plaintiff is not *at this time* entitled to take the discovery deposition of defendant's expert. Rather, plaintiff should pursue his investigation through another expert. Whether and to what extent the parties and their experts will be required to make disclosure in the future will depend upon the application of the rule of fairness in the sound discretion of the Trial Judge.

The petition for certiorari and supersedeas is sustained. The order of the Trial Judge requiring that Dr. Donald Kinzer give his deposition at this time is vacated without prejudice to future applications for the same relief under different circumstances.

The costs of this proceeding are taxed against the plaintiff, Edward L. Lutz. The cause is remanded for further proceedings.

Reversed and Remanded.

SHRIVER, P. J., concurs.