State ex rel. v. Hunt.

STATE *ex rel.* McMORROW *v.* W. F. HUNT, County Court Clerk.

(*Nashville.* December Term, 1916.)

**1. OFFICERS. Ouster. Malfeasance. "Full hearing."**

In Acts 1915, chapter 11, section 10, entitling an officer against whom ouster proceedings are brought to a full hearing, the words "full hearing" mean only that the chancellor shall give ample opportunity to both sides to make a showing fairly adequate to show the propriety or impropriety of suspension pending final hearing. (*Post, pp.* 242, 243.)

Cases cited and construed: Acts 1915, ch. 11, sec. 10.

Case cited and approved: State ex rel. v. Howse, 132 Tenn., 452.

**2. OFFICERS. Ouster. Malfeasance. Discretion of court.**

In proceedings under Acts 1915, chapter, 11, section 10, to oust a county court clerk, where proof was begun in November and the motion for suspension pending final hearing was not made until the middle of February, there was no abuse of the chancellor's discretion in ordering suspension. (*Post, pp.* 242, 243.)

**3. CERTIORARI. Function of writ. Interlocutory order.**

Supervision of court may be exercised in proper case through *certiorari* before final decree, if the lower court acts without jurisdiction or illegally, in view of Shannon's Code, section 4853, providing that the writ of *certiorari* may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy. (*Post, pp.* 243-245.)

Cases cited and approved: State ex rel. v. Hebert, 127 Tenn., 220; Conners v. City of Knoxville, 136 Tenn., 428; State ex rel. v. Alexander, 132 Tenn., 439.

Code cited and construed: Sec. 4853 (S.).

4. **CERTIORARI.   Function of writ.   Common-law writ.**

The common-law writ of *certiorari*, as distinguished from the statutory writ, may not be had to correct technical or formal errors not affecting jurisdiction or power, or for correction of defects not amounting to an illegality which is fundamental as distinguished from an irregularity. (*Post, p.* 245.)

5. **CERTIORARI.   Existence of other remedy.**

Common-law *certiorari* will not lie to correct errors of fact or law in an interlocutory order of suspension in ouster proceedings from which an appeal is expressly authorized. (*Post, pp.* 245-247.)

Case cited and distinguished: State v. Judge, 42 La. Ann., 1089.

## FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—JOHN ALLISON, Chancellor.

F. J. McMORROUGH, J. H. ZARECOR and ARMISTEAD & GILL, for plaintiff.

SAMUEL N. HARWOOD, FRANK P. BOND and E. A. PRICE, for defendant.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

W. F. Hunt, county court clerk of Davidson county, having been suspended from office by an order of the chancery court, has presented to this

court a petition for *certiorari,* seeking to bring up the order of suspension for review and reversal.

The petition of accusation enumerates several grounds of misfeasance and malfeasance on the part of Hunt, as clerk, among them:

(a) That he procured $3,365 for making out the tax duplicate books, on false representations made to the county court.

(b) That he charged and collected $1, on each marriage license issued, in excess of the legal fee.

(c) That he increased the fee for the qualification of executors and administrators from $3 to $5. without warrant of law.

(d) That he loaned what is denominated the "equity funds" without any order of court authorizing him to do so, and that he took no security or sufficient security from his brother, the borrower.

(e) That in collecting fees for liquor licenses he kept no record showing the payors, dates, or amounts, and gave no receipts to the payors, with result that his office cannot be audited, etc.

The chancellor heard the motion to suspend Hunt after proof had been taken that fills three large volumes, and after Hunt had testified.

It is charged in the petition for *certiorari* that the chancellor acted illegally in not giving a full hearing, and in ruling that Hunt was probably guilty of some or all of the acts above outlined; and we are asked to annul and vacate the order of suspension.

The Ouster Act (Acts 1915, chapter 11) under which Hunt was proceeded against, after providing for suspension by order, and for judgment of ouster on final hearing, in case guilt is found, provides in section 10:

"No such person shall be suspended under the provisions of this act until at least five days' notice of the application for the order of suspension shall be served upon him, which notice shall set forth the time and place of the hearing of said application and said officer shall have the right to appear and make any defense that he may have and shall be entitled to a full hearing upon the charges contained in the complaint and upon the application for the order of suspension." etc.

Under this statute the words "a full hearing" mean no more than that the chancellor shall give ample opportunity to both sides to make a showing fairly adequate to make manifest the propriety or impropriety, from the standpoint of justice, of the step asked to be taken—the suspension until final hearing of the officer accused. State ex rel. v. Howse, 132 Tenn., 452, 457, 178 S. W., 1110. Necessarily a discretion in that regard is lodged in the chancellor, and on this record it was not abused. The proof was begun on November 1, 1916, and the motion was not heard until February 13, 1917. The first witness examined by the relator was Hunt himself, and the chancellor based the order of suspension on the defendant's own testimony, in large part.

The interlocutory character of the order of suspension was sufficiently demonstrated in *State ex rel.* v. *House,* supra.

Upon that ruling is predicated an insistence on the part of the relator to the effect that *certiorari* to review and set aside such an order will in no case be granted by this court. Because there is no decree final in nature, it is argued there can be no review on *certiorari.*

That depends. The supervisory power of the court may be exercised, in a proper case, through the writ of *certiorari* before a final decree has been passed, provided that the lower court or the inferior tribunal has acted without jurisdiction, or in excess of jurisdiction or illegally. *State ex rel.* v. *Hebert,* 127 Tenn., 220, 241, 154 S. W., 957.

The nature of the common-law writ of *certiorari* as an instrument for use in the supercision of inferior tribunals was set forth in the recent case of *Conners* v. *City of Knoxville,* 136 Tenn., 428, 189 S. W., 870, where it was pointed out that by our statute (Code, Shannon, sections 4853, 4854) it was not intended to work a change in the common-law functions of such a writ as a supervisory or superintending writ; and, further, that though an appeal may be granted in a particular statutory proceeding, this does not preclude a resort to *certiorari* in the circumstances there pointed out.

Shannon's Code, section 4853, provides as follows:

"The writ of *certiorari* may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy."

That the use of this writ does not necessarily depend upon the final nature of the decree sought to be reviewed is demonstrated by both phases of the case of *State ex rel.* v. *Alexander,* 132 Tenn., 439, 178 S. W., 1107:

(a) In the holding that this court might review by means of *certiorari* the *fiat* of a judge of the court of civil appeals in an ouster case, because of the want of jurisdiction of the subject-matter in that court.

(b) In the ruling that *certiorari* might be availed of to review a proceeding to oust an official, under the Ouster Act, where he was suspended by means of preliminary injunctive process, issued by a circuit judge, on the ground that it was in excess of the jurisdiction given to the circuit court. There was not a total absence of jurisdiction on the part of the circuit court over the subject-matter, but it was not warranted in suspending an officer by an injunctive fiat or without five days' notice and a full hearing.

In the case of *State ex rel.* v. *House,* supra, the effort was to use *certiorari* under a claim that the Ouster Act was unconstitutional and void, in which event the circuit judge would have been without jurisdiction to suspend the official. The effort, there-fore, was based on an assertion of absence of juris-diction.

There is no claim advanced by Hunt in the present case that the chancery court was without jurisdiction, nor that it was acting in excess of the jurisdiction conferred on it. The claim, therefore, must be that the chancellor was "acting illegally" within the meaning of the code section touching the writ of *certiorari.*

Without undertaking to define that phrase of the statute with exactness or to say what it includes, we think it clear that the common-law writ, as distinguished from the statutory writ, or *certiorari* in lieu of appeal, may not be resorted to for the correction of technical or formal errors, not affecting jurisdiction or power, or for the correction of defects that are not radical, amounting to an illegality that is fundamental, as distinguished from an irregularity.

Errors of fact or law, that are merely such, may be corrected on an appeal expressly allowed to be taken from the final decree of ouster. Common-law *certiorari* may not be used to review an interlocutory order of suspension for such errors.

An appeal is adequate for the remedying of errors of that sort. As was said in the Conners Case:

"The right of appeal, while generally held an adequate means of correcting mere errors committed in the exercise of jurisdiction, may prove inadequate to redress, or prevent a wrong done in the absence or excess of jurisdiction."

If the contrary were held, this court would have placed on it the burden of twice reviewing an ouster case on the same asserted errors; once on *certiorari* following the decretal order of suspension and again on appeal after final decree has passed, based on proof adduced.

Applicable to the common-law writ is this excerpt:

"It must be borne in mind that the functions of *certiorari* are simply to ascertain the validity of proceedings before a court of justice, either on the charge of their invalidity, because the essential forms of the law have not been observed, or on that of the want of jurisdiction in the court entertaining them. The writ has never been employed to inquire into the correctness of the judgment rendered where the court had jurisdiction, and was therefore competent. Hence it has been held that the supervisory jurisdiction of the court on a *certiorari* must be restricted to an examination into the external validity of the proceedings had in the lower court. It cannot be exercised to review the

judgment as to its intrinsic correctness, either on the law or on the facts of the case. The supervisory powers of the court should not be confounded with its appellate jurisdiction." 5 R. C. L., 251; *State v. Judge,* 42 La. Ann., 1089, 8 South., 277, 10 L. R. A., 248.

In our opinion there is no claim of error on the part of the chancellor that makes the common-law writ appropriate, under the tests above prescribed. The writ is denied.

### On Petition to Rehear

A petition to rehear has been filed by Hunt, in which it is stated that he meant to apply for a statutory writ of *certiorari* (as well as any other), and that his right thereto was not discussed or passed upon in the original opinion.

We think the petitioner misconceives what we have denominated the common-law writ of *certiorari.* The use of it as a supervisory writ is recognized and provided for in the Code (Sections 4853 and 4854) in the words:

"The writ of *certiorari* may be granted . . . in all cases where an inferior tribunal board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy."

By this language there is merely put in statuory form provision for a writ that existed at common law or before the passage of the statute.

If petitioner means to say that his application was for a writ ''as a substitute for appeal,'' or ''instead of writ of error''—what we have denominated the statutory writ (*Conners* v. *Knoxville, supra*)—then it is clear that he is not entitled to same, because there has been no final decree, and no decretal order that touches upon final relief. The Ouster Act provides for ouster only on final hearing or by final decree, and—

''that either party may appeal or prosecute a writ of error to the supreme court, from the final judgment or decree, but such appeal or writ of error shall not operate to suspend or vacate the judgment or decree, but the same shall remain in full force until vacated, reversed or modified by the supreme court.''   Section 9.

The statute also makes provision for the restoration of the officer suspended in event he succeeds on final hearing, and for the allowance to him of his salary and fees of office during the period of his suspension. We fail to see anything that trenches on final relief in the order of suspension sought to be here reviewed.

The petitioner is so clearly not entitled to the statutory writ that we construed his application to be one for the writ of supervision, and discussed the case on that basis.

Petition for a rehearing is denied.