STATE of Tennessee, Petitioner,

v.

James JOHNSON, Respondent.

Supreme Court of Tennessee.

Aug. 25, 1978.

---

1. *Jones v. Sullivan County Beer Board,* 200 Tenn. at 306, 292 S.W.2d at 187.

Robert A. Grunow, Asst. Atty. Gen. for petitioner.

Jimmie McIntyre and Tim J. Thompson, Memphis, for respondent.

## OPINION

HENRY, Chief Justice.

This criminal action is before the undersigned member of the Court on Petition for Common Law Writs of Certiorari and Supersedeas.

The trial judge sustained respondent's motion to suppress evidence of certain drugs held to have been seized in violation of the Fourth Amendment to the Constitution of the United States. The effect of this action on the part of the trial judge, as a practical matter, was to end the prosecution.

At a former hearing on the petition I expressed the "tentative and preliminary opinion that the petition [was] meritorious" but held the matter in abeyance, pending a decision of the Court of Criminal Appeals. It now appears that the appeal has been dismissed under the authority of *State v. Bonhart*, 223 Tenn. 582, 448 S.W.2d 669 (1969), by an order reciting that "the State has no right of direct appeal from a trial court's interlocutory order suppressing evidence." For the purposes of this opinion, the Court accepts this to be a correct legal conclusion, although the writer of this opinion views this generally accepted proposition as being subject to serious and substantial doubt.

### I.

*The Searches and Seizures*

■ The first search and seizure occurred at the Los Angeles International Airport on October 27, 1976, when a customer service

agent of United Airlines processed a package delivered by two visibly nervous women, which purportedly contained a suit of clothes to be air-expressed to Memphis. Upon X-raying the package, he observed five dark masses, and after doing so, opened the package for purposes of inspection.[1] It developed that these masses were five individually wrapped packets. This action was wholly independent of any information, request or involvement of any law enforcement official.

As a result of this inspection it was determined that these packets contained a quantity of pills. Whereupon, a member of the Narcotics Division of the Los Angeles Police Department was contacted. Upon his arrival the package was open and the pills were in plain view. He conducted a field test and determined that they were amphetamine.

This police officer retained one packet of the drugs and placed the remaining four back in the box. He thereupon telephoned Sergeant Tom Wright of the Shelby County Sheriff's Department, advised him of the shipment, and made inquiry as to whether the Memphis authorities wished to pursue a "follow up investigation." Upon receiving an affirmative response, he permitted United Airlines to place the package upon its flight destined for Memphis.

After the flight arrived in Memphis, Sergeant Wright and other law enforcement officers observed the package and staked out the United Airlines counter. When respondent showed up and claimed the package, the seizure was made.

It was the Los Angeles search that was invalidated by the trial judge. After correctly recognizing that "[t]he Fourth Amendment does not protect against searches and seizures conducted by private parties without governmental involvement" (citing *Burdeau v. McDowell*, 256 U.S. 465,

41 S.Ct. 574, 65 L.Ed. 1048 [1921]), the trial judge held the applicable and controlling authority to be *Lustig v. United States*, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949). The crux of the holding in *Lustig* with respect to the officer's involvement was that "[s]o long as he was in it before the object of the search was completely accomplished, he must be deemed to have participated in it." 338 U.S. at 79, 69 S.Ct. at 1374, 93 L.Ed. at 1823.

In *Lustig*, the officer came upon the scene while the search was in progress and, therefore, "before the object of the search was completely accomplished." Here, the search had been completed before the Los Angeles police officer arrived upon the scene.

The case of *United States v. DeBerry*, 487 F.2d 448 (2d Cir. 1973), is precisely in point. There a supervisor of air freight service in Los Angeles, noting the nervous behavior of a shipper of a suitcase destined for New York City, opened it and found fifteen bricks of marijuana. He then contacted the Los Angeles police, who, after inspecting the bag, notified the New York authorities of the shipment. When the suitcase was picked up in New York, it was seized by New York authorities.

After noting that "an inspection by a carrier is not a governmental search" and that "Emery Air Freight conducted the search *independently of any information or request received from government officials,*" (emphasis supplied) 487 F.2d at 450, the Court held that the search was not invalid under the Fourth Amendment.

With respect to the New York search the Court, after noting that the suitcase while in transit "remained legally seized," said:

> Thus, when the agents and police in New York removed the bag from the back seat of the car appellants were in, they were *not making an initial* seizure, but rather

---

1. Carriers have full authority to make such inspections. See Rule 24, Civil Aeronautics Board, Regulation 96; *United States v. Ford, infra*; and *United States v. DeBerry, infra*. Tariffs filed by carriers pursuant to 49 U.S.C. § 1373(a) confer the right to inspect and the practical effect is the consent of the shipper to the search.

were merely *reasserting control* of the suitcase which had *already been seized* for legal purposes and which was merely being used as bait. (Emphasis supplied). 487 F.2d at 451.

Precisely the same results were reached in *United States v. Ford*, 525 F.2d 1308 (10th Cir. 1975). There the airline search took place in San Francisco and the seizure of the shipment occurred in Oklahoma City. The Court held that they constituted "one episode and must be considered together for Fourth Amendment purposes." Id. at 1310. The Court validated both the search and the seizure.

■ As I understand this record, the Memphis seizure *per se* was not attacked. The contention is that it was tainted by an allegedly unconstitutional seizure in California. Aside from the reasoning reflected in the above cases, the Memphis seizure was made under exigent circumstances and was supported by compelling probable cause—indeed the Memphis authorities knew to a certainty that contraband drugs were contained in the shipment. They were not able, however, to abide the Fourth Amendment requirement of "particularly describing the place to be searched, and the person or things to be seized," until after the respondent showed up to claim the shipment. It then became expedient and exigent that the seizure be made instanter.

I hold that the California search and the Tennessee seizure satisfied the requirements of the Fourth Amendment of the Constitution of the United States and of Article I, Section 7 of the Constitution of Tennessee.

## II.

*The Entitlement of the State to Relief under the Common Law Writ of Certiorari*

### A.

#### General

■ The caption of this section poses a problem of critical concern. I approach it within the context of a fixed opinion that the State's interest has been plainly and palpably prejudiced by the ruling of the trial judge; that under current concepts the State has no right of appeal from an interlocutory judgment (in this case it is in effect a judgment of acquittal); and that a denial of this writ would operate to cause the State to forfeit an interest it can never recapture.

I applaud the criminal law explosion of the last two decades resulting in a more enlightened system of criminal justice, but a decent regard for fundamental fairness compels the conclusion that the State and its citizenry have an interest in the enforcement of our criminal laws. Criminal procedures must meet the critical criteria of mutual fairness.

Blind adherence to precedents tends to preclude progress and frustrate fairness. In my view, it is unthinkable that the State should lose a major criminal case on an interlocutory ruling at the trial level with no right of review.

Being guided by these beliefs and by what I conceive to be the interest of justice, I am granting the State's petition for certiorari and supersedeas.

### B.

*The Nature and History of the Common Law Writ*

Section 27–801, T.C.A., provides:

The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy.

Section 27–802, T.C.A., provides:

Certiorari lies: (1) On suggestion of diminution; (2) where no appeal is given; (3) as a substitute for appeal; (4) instead of audita querela; (5) instead of writ of error.

These two Code sections appeared in the Code of 1858 as Sections 3123 and 3124, respectively, and it is doubtful that they were intended to apply to the appellate courts.[2] This, however, is of no significance, since they track the common law.

"The writ of certiorari does not owe its existence to constitutional provision[3] or statutory enactment." *Tennessee Central Railroad Co. v. Campbell,* 109 Tenn. 640, 645, 75 S.W. 1012, 1012 (1903). It is a common law writ of ancient origin and has been characterized as extraordinary, remedial, revisory, supervisory, and prerogative.[4]

## C.

### The General Rule

At the very outset, I recognize the *general* rule, as cogently stated in *State ex rel. McMorrow v. Hunt,* 137 Tenn. 243, 250, 192 S.W. 931, 933 (1917):

It must be borne in mind that the functions of certiorari are simply to ascertain the validity of proceedings before a court of justice, either on the charge of their invalidity, because the *essential forms of the law have not been observed,* or on that of the *want of jurisdiction* in the court entertaining them. The writ has never been employed to inquire into the correctness of the judgment rendered where the court had jurisdiction, and was therefore competent. Hence it has been held that the supervisory jurisdiction of the court on a certiorari must be *restricted to an examination into the external validity* of the proceedings had in the lower court. *It cannot be exercised to review the judgment as to its intrinsic correctness, either on the law or on the facts of the case.* The supervisory powers of the court should not be confounded with its appellate jurisdiction. (Emphasis supplied).

## D.

### The Fundamental Illegality Exception

The courts have not hesitated to make exceptions to the general rule. One of these is the "fundamental illegality rule" first enunciated in *State ex rel. McMorrow v. Hunt, supra,* and culminating in our recent decision in *Whitwell v. State,* 520 S.W.2d 338 (Tenn.1975).

In *Hunt* the Court denied the common law writ. The issue was whether the lower court was "acting illegally." Without defining that phrase, the Court said:

[W]e think it clear that the common law writ . . . may not be resorted to for the correction of technical or formal errors, not affecting jurisdiction or power, or for the correction of defects that are not radical, amounting to an *illegality that is fundamental,* as distinguished from an irregularity. (Emphasis supplied). 137 Tenn. at 249, 192 S.W. at 933.

*Hunt* stressed that "[a]n appeal is adequate for the remedying of errors of that sort [fact and law]." *Id.* at 250, 192 S.W. at 933. No fundamental error was found. *Hunt* is among the first of numerous cases to stress the availability or adequacy of an appeal. (See ensuing section.)

In *State v. Odom,* 200 Tenn. 231, 292 S.W.2d 23 (1956), the trial judge reduced a jury conviction from first degree murder to

---

2. The early cases tend to establish that these sections applied to the circuit courts. See *Staples v. Brown,* 113 Tenn. 639, 85 S.W. 254 (1905), and *Cockrill v. Peoples Savings Bank,* 155 Tenn. 342, 293 S.W. 996 (1927). Justice Green, in *Cockrill,* held that the appellate courts have the same jurisdiction to grant certiorari to correct the judgment of inferior courts that the circuit court has to award the writ to correct the errors of inferior tribunals.

3. Article VI, Sec. 10, Constitution of Tennessee relates solely to the "Judges or Justices of the Inferior Courts of Law and Equity." This provision was intended as a guarantee of the continuance of a power these judges already possessed. *Tennessee Central Railroad Co. v. Campbell, supra.*

4. See 14 Am.Jur.2d, *Certiorari,* Sec. 1 (1964).

murder in the second degree, overruled the state's motion for a new trial and denied the state's prayer for an appeal. The state petitioned for the common law writ. It should be observed that in the literal and conventional sense the trial court had not "exceeded the jurisdiction conferred" and was not acting "illegally" in the usual sense of the word. He merely committed a procedural error—an error of law.

This Court, however, granted the writ, holding that:

> his action in reducing the degree of unlawful homicide from that found by the jury is *illegal.* 200 Tenn. at 235, 292 S.W.2d at 25.

Again the Court noted the absence of a "plain, speedy, or adequate remedy" by appeal.

In *Taylor v. Continental Tennessee Lines, Inc.,* 204 Tenn. 556, 322 S.W.2d 425 (1959), relying upon *Hunt, supra,* and emphasizing a "failure to proceed *according to the essential requirements of the law,*" (emphasis supplied) *Id.* at 560, 322 S.W.2d at 427, the Court granted the common law writ, holding that the refusal of the trial judge to permit the filing of a plea in abatement

> was contrary to law and in legal effect amounted to a *denial to the defendants of their day in court.*" (Emphasis supplied). 204 Tenn. at 560, 322 S.W.2d at 426.

In *Medic Ambulance Service, Inc. v. McAdams,* 216 Tenn. 304, 392 S.W.2d 103 (1965), the procedural background was that a trial judge had ordered the Union Railway Company to produce for inspection and copying the investigative file of its claims agent. Responding to the Company's petition for the common law writ, the Court said:

> We think the error here complained of amounted to an *illegality which is fundamental,* as distinguished from an irregularity, a technical or formal error not affecting jurisdiction or power; and, although not a final order or judgment, is, nevertheless, reviewable by the common

law writ of certiorari. 216 Tenn. at 321, 392 S.W.2d 111.

Finally, in *Whitwell,* we granted the common law writ, relying upon the *Hunt* "fundamental illegality" rule in order to bar a second trial in violation of the defendant's constitutional protection against double jeopardy.

Again, in *Whitwell,* the trial court was not acting "illegally" nor was it acting in "excess of its jurisdiction." The court had ruled erroneously on a matter of law. It is just that simple. Had Whitwell been convicted as a result of a second trial, he would have had a right to appeal; but, absent our grant of the common law writ, he had no full, complete and adequate remedy. This follows from the fact that, absent our grant, he would have suffered the jeopardy of a second trial.

In reaching our conclusion in *Whitwell,* we relied upon "a Missouri case, quoted with approval in *Conners v. City of Knoxville,* 136 Tenn. 428, 189 S.W.2d 870 (1916)":

> The statement that certiorari will not issue where either appeal or error goes, though frequently met with in textwriters, and in some reports, is neither strictly true nor accurate. There are marked exceptions. *Thus, where the exigencies of the case are such that the ordinary methods of appeal or error may not prove adequate, either in point of promptness or completeness, so that a partial or total failure of justice may result, then certiorari may issue.* (Emphasis supplied). 520 S.W.2d at 342.

Again, in the case at bar, the remedy of appeal is not just inadequate, it is non-existent.

## E.

### The Right of Appeal

In the preceding section, we noted various cases wherein heavy emphasis was placed upon the lack of an appellate reme-

dy. Since certiorari is a discretionary writ,[5] this consideration is critical.

I am captivated by the language of Justice John Haywood in *Bob, a slave v. The State,* 10 Tenn. 173 (1826):

The maxim of the law is, that there is no wrong without a remedy; and it is a particular rule, that a *certiorari will lie* to all inferior jurisdictions, (the proceedings of which *cannot be corrected by writ of error,*) to remove their proceedings into the superior court, to be there affirmed, or quashed, or otherwise corrected, *as law and justice shall require.* (Emphasis supplied). 10 Tenn. at 176.

In the century and a half since *Bob* was decided, the pronouncement of one of Tennessee's foremost early legal scholars, who fully understood the use of the common law writ, has been ignored and the result has been a distortion of the purposes of this remedial writ. I am content to abide *Bob.*

The instant petition for certiorari was prompted by the dismissal of the State's appeal to the Court of Criminal Appeals; and, in turn, that dismissal was prompted by *State v. Bonhart,* 223 Tenn. 582, 448 S.W.2d 669 (1969), wherein it was held that the State had no right of appeal from the action of a trial judge in suppressing evidence, even though the Court recognized that the order of suppression "present[ed] difficulties in the way of proceeding further with [the] prosecution of the case."

Hence, it is that the State's only avenue of relief against a suppression order, plainly and palpably erroneous, is by the common law writ of certiorari.

### F.

*Decisional Law Supporting the Use of the Common Law Writ to Correct Interlocutory Judgments*

There is ample precedent in our case law supporting the right of the appellate courts to entertain the common law writ to review interlocutory judgments in criminal action even though the trial judge has not acted illegally or in excess of his jurisdiction.

Thus, in *State v. Dougherty,* 483 S.W.2d 90 (Tenn.1972), where the trial judge "arbitrarily ignored the statutory and case law of this state," the writ was granted. Involved was an order to the District Attorney General to disclose materials and information, including statements, reports of experts, the results of tests, etc. In granting the writ, the Court made this significant comment:

[I]t is apparent the State has no other plain, speedy or adequate remedy. In the event [defendants] should be convicted the question would be moot and in the event [they] were acquitted the *State has no right of appeal.* (Emphasis supplied). 483 S.W.2d at 92.

*State v. Gant,* 537 S.W.2d 711 (Tenn. Crim.App.1975), is precisely in point. The trial judge suppressed evidence obtained as a result of a warrantless search, thus effectively terminating the prosecution and leaving the state without a remedy. Relying upon *Dougherty,* the Court of Criminal Appeals granted the writ, reversed the trial judge and remanded. The Court said:

We think the learned veteran trial judge was *without legal authority* to suppress the evidence and to hold that the search . . . violated the prisoner's rights under the . . . United States Constitution. (Emphasis supplied). 537 S.W.2d at 713.

In *Gant* the Court obviously equated the phrase "without legal authority" with the statutory phrases "exceeding the jurisdiction conferred" and "acting illegally." In my view, the opinion would have been more soundly based had it been founded upon the plain and patent error of the trial judge coupled with the absence of an appellate remedy. Phrasing it another way, the state had lost a right not subject to recapture.

Also in point is *State v. Wert,* 550 S.W.2d 1 (Tenn.Crim.App.1977), where the trial

5. See *Helton v. State,* 194 Tenn. 299, 250 S.W.2d 540 (1952).

judge suppressed evidence obtained by a warrantless search. The then Presiding Judge of the Court of Criminal Appeals wrote for the Court. The opening sentence:

> We granted the state's petition to determine whether or not the trial judge *abused his discretion* in suppressing the evidence . . . . (Emphasis supplied). 550 S.W.2d at 1.

*Gant* was decided by Judges Mitchell, Walker and Russell; *Wert* by Judges Walker, Duncan and Tatum. Thus, these veteran judges determined that the common law writ was appropriate to review an interlocutory order.

Finally, by dictum, in *Hale v. State,* 548 S.W.2d 878 (Tenn.1977), we held:

> Counsel could have protected his client's right to a proper preliminary hearing by filing a petition for common law certiorari and supersedeas with one of the judges of the Court of Criminal Appeals, and, if necessary, with a member of this Court.[6]

This dictum was prompted by the fact that a preliminary hearing is "a critical stage in the prosecution of a criminal action and . . . is mandated by statute," and because it is a "pretrial type of arraignment where *certain rights may be sacrificed or lost.*" *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); *McKeldin v. State,* 516 S.W.2d 82 (Tenn.1974).

### III.

#### Conclusion

I have no quarrel with the general rule that the common law writ should be restricted to those cases where an inferior tribunal has exceeded the jurisdiction conferred or is acting illegally *and* there is no other plain, speedy or adequate remedy. I agree, as a general proposition that it does not normally lie to inquire into the correct-ness of the judgment where the Court has jurisdiction. I further agree that piecemeal review, as a general rule, is to be shunned.

■ I am persuaded, however, that there are, and must be, exceptions to the general rule. I will not attempt to catalog them; however, they would include, but not be restricted to, the following:

a. Where the ruling of the Court below represents a fundamental illegality. *State ex rel. McMorrow v. Hunt, supra; Medic Ambulance v. McAdams, supra; Whitwell v. State, supra.*

b. Where the ruling constitutes a failure to proceed according to the essential requirements of the law. *Taylor v. Continental Tenn. Lines, supra.*

c. Where the ruling is tantamount to the denial to either party of a day in court. *Taylor v. Continental Tenn. Lines, supra.*

d. Where the action of the trial judge was without legal authority. *State v. Gant, supra.*

e. Where the action of the trial judge constituted a plain and palpable abuse of discretion. *State v. Wert, supra.*

f. Where either party has lost a right or interest that may never be recaptured. *State v. Hale, supra; State v. Dougherty, supra.*

■ In entertaining and acting upon this discretionary writ, in my view, a critical consideration is the existence of an effective, available and expeditious appellate remedy. The mere fact that an appeal may ultimately afford a vehicle for the presentation of the errors asserted may well be of no significance. The right or interest sought to be protected may be eroded or devitalized notwithstanding the successful pursuit of an appeal. Again, the ultimate test must be whether, absent the use of the

---

6. In the context of *Hale,* we should have noted that the petition for common law certiorari should be addressed initially to the trial court.

common law writ, either party to a criminal action loses a right or forfeits an interest that can never be recaptured.

'I am unable to comprehend the soundness of any judicial reasoning or authority under which the doors of this constitutional court of last resort are barred to a litigant whose constitutional or statutory rights have been frustrated in the trial court.

To say that this Court may not intervene by common law writ except when the lower court acts illegally or in excess of its jurisdiction, in the conventional sense of these terms, is to say that under our system there may be wrongs without remedies. This I am unwilling to do. Such a position frustrates the administration of criminal justice.

In the case at bar, the State's interest has been destroyed. This is fundamental error and a failure to proceed according to the essential requirements of the law. The State has no other remedy.

The writs of certiorari and supersedeas are granted. The order of the trial court is vacated and this cause is remanded for trial.

Originally, this opinion was released over the signature of the undersigned member of the Court. Subsequently, respondent filed a petition for a rehearing by the entire Court. Pursuant to this motion the entire Court has considered the matter and concurs in the original opinion with this paragraph being substituted for the last paragraph of the former opinion. On remand, the respondent is privileged to present further proof and argument in support of his motion to suppress and to assign appropriate errors upon any ensuing appellate review.