# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

**March 6, 2000**

**Cecil Crowson, Jr.
Appellate Court Clerk**

PAMELA LANNOM, )
)
    Petitioner/Appellant, )
)
       Appeal No.
       M1999-00137-COA-R3-CV
)
VS. )
)
       Davidson Chancery
       No. 98-2619-III(II)
)
BOARD OF EDUCATION FOR )
THE METROPOLITAN )
GOVERNMENT OF NASHVILLE )
AND DAVIDSON COUNTY, )
)
    Respondent/Appellee. )

APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE CAROL L. MCCOY, CHANCELLOR

JAMES G. THOMAS
KENDRA E. SAMSON
150 Fourth Avenue North
Nashville, Tennessee 37219
    Attorneys for Petitioner/Appellant

FRANCIS H. YOUNG
Metropolitan Attorney
204 Metropolitan Courthouse
Nashville, Tennessee 37201
    Attorney for Respondent/Appellee

AFFIRMED AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
COTTRELL, J.

## O P I N I O N

The Davidson County Board of Education conducted a termination hearing for a tenured teacher who had been caught on videotape stealing pills from a student's prescription bottle. After the hearing, the teacher was dismissed

from her position. She subsequently filed a Petition for Writ of Certiorari, which was dismissed after a Chancery Court hearing. We affirm the Chancery Court.

## I. A Sting Operation

Pamela Lannom was a tenured special education teacher at Hickman Elementary School Annex in Davidson County. The school had experienced eight incidents over two years in which Ritalin was discovered to be missing from prescription bottles which were held for children at the school. Most of the incidents occurred when the Ritalin was being stored under lock and key in the school's office.

After each incident, the principal contacted the Police Department and the Director of Security for the school system. Eventually, the Police Department agreed to install a small video surveillance camera in the school office, which was trained on the desk of Mrs. Betty Ivy, the school secretary. Mrs. Ivy's job included logging in the students' Ritalin supplies, keeping the drugs secure, and dispensing them to the appropriate children each day.

An old prescription pill bottle labeled "Methylphenidate" was placed in an unlocked drawer in the secretary's desk. Methylphenidate is the generic name for Ritalin. Twelve baby aspirin, which resemble 5-milligram Ritalin pills, were placed in the bottle. The secretary counted the pills twice a day to make sure their number remained constant.

On the afternoon of February 9, 1998, two weeks after the sting operation began, Mrs. Ivy counted the pills and noticed that some of them were missing. The surveillance tape was removed and viewed by members of the Police Department, the Principal, and other school officials. Mrs. Lannom was identified as the person who reached into the secretary's desk drawer, popped the

top off the bottle, poured some of the pills into her hand, replaced the top of the bottle, put it back into the desk drawer, and slipped the pills into her jacket pocket, all while carrying on a conversation with Mrs. Ivy.

Two days later, Detective Daniel Postiglione of the Metropolitan Police Department conducted an interview with Mrs. Lannom. He first asked her if she had taken the pills. She denied doing so. She was then confronted with four still pictures from the video, after which she admitted taking the pills, going to the bathroom to inspect them, and flushing them down the toilet.

Immediately afterwards, Mrs. Lannom met with the principal, the vice-principal and with Dr. Susan Goss, the Director of Certified Elementary Personnel. Dr. Goss told her that she had two choices: she could resign, and the pill incident would never become public; or she could defend her conduct in a dismissal hearing before the School Board. Mrs. Lannom was given 48 hours so she could discuss her options with her family and her attorney before making up her mind. Two days later, Mrs. Lannom's attorney contacted Ms. Goss and informed her that Mrs. Lannom was not going to resign.

On March 19, 1998, Superintendent of Schools Dr. Bill Wise sent a letter to the Board of Education, recommending Mrs. Lannom's dismissal from employment on the basis of "conduct unbecoming a member of the teaching profession consisting of dishonesty and unreliability as set forth in Tenn. Code. Ann. § 49-5-501(3)(C)." The letter went on:

> "This charge is justified by Mrs. Lannom's denial of, then subsequent admission to, taking tablets from a child's prescription bottle in the secretary's desk at the Hickman Elementary School Annex. The taking of the tablets was videotaped by the Metropolitan Police Department."

A copy of this letter was sent to Mrs. Lannom's attorney, together with a memorandum provided by the Commissioner of Education advising Mrs. Lannom of her legal duties, rights and recourse.

## II. Proceedings before the Board

The hearing before the Board of Education took place in five weekly installments which totaled 17 hours. Nineteen witnesses testified in all. The Board members also viewed the surveillance videotape and listened to an audiotape of Detective Postiglione's interview of Mrs. Lannom. One entire evening was dedicated to Mrs. Lannom's testimony.

On direct questioning, Mrs. Lannom testified about her nineteen year career as a special education teacher. She then gave her account of the events of November 9, 1998. Mrs. Lannom said that she was sitting at Ms. Ivy's desk after lunch, and took a phone call from a parent. She needed to jot down a note, and opened the desk drawer to get a pencil, when she saw the pill bottle. She shook it, and asked Mrs. Ivy if she knew about the bottle. Mrs. Ivy replied that she had it under control.

Mrs. Lannom testified that she was somewhat surprised by Mrs. Ivy's off-hand response, because keeping pills in an unlocked location was a violation of the security procedures that had been put in place to prevent further disappearances of Ritalin. She said that she opened the bottle to have a look at the pills, and she could see that they weren't Ritalin. She then covertly shook some out into her hand, and put them in her pocket so she could take a closer look at them.

After leaving the office, she checked the pills against a prescription pill book she kept in her classroom, but couldn't identify them. She then called

her husband, who advised her not to get involved in playing detective, and to just get rid of the pills, which she did. She couldn't explain why she took the pills in the first place, but described it as an impulsive and foolish act. She said she didn't return the pills to the bottle, because she was unable to do so surreptitiously, and would have been embarrassed to tell Mrs. Ivy that she had taken them.

At the conclusion of all testimony, the Board discussed the evidence. All the Board members agreed that Mrs. Lannom was guilty of conduct unbecoming a member of the teaching profession, consisting of dishonesty and unreliability. There was some disagreement as to what the appropriate punishment should be, with some members favoring dismissal, and others recommending the lesser penalty of suspension without pay. In the end, the Board voted 5-3 to terminate Mrs. Lannom's employment.

### III. Proceedings in the Trial Court

On August 27, 1998, Mrs. Lannom filed a Petition for Writ of Certiorari in the Chancery Court, which, under Tenn. Code. Ann. § 49-5-513, was her sole avenue of appeal. In her petition, Mrs. Lannom argued that the proceedings before the Board deprived her of due process, and that the finding of guilt was against the weight of the evidence. She also argued that the punishment of dismissal was extreme, and was disproportionate to her admitted offense of taking four baby aspirin that did not belong to her.

The Chancellor noted that the scope of review in a certiorari action is narrow. *Yokley v. State*, 632 S.W.2d 123 (Tenn. Ct. App. 1981). The court's function in such a proceeding is not to rule on the intrinsic correctness of the judgment below. It may not reverse the board if its judgment is supported by

material evidence, unless the board has exceeded its jurisdiction, or has otherwise acted unlawfully, arbitrarily or fraudulently.

After reviewing the evidence, the court concluded that Mrs. Lannom had not been deprived of due process, that the Board's action was supported by material facts, that the finding of guilt was not arbitrary or capricious, and that termination was not a disproportionate punishment for the offense. The court accordingly dismissed the petition. This appeal followed.

## IV. Notice and Due Process

The causes for which a teacher may be dismissed include "incompetence, inefficiency, neglect of duty, unprofessional conduct and insubordination." Tenn. Code. Ann. § 49-5-511. Under that statute, a teacher who is charged with an offense that might justify dismissal must receive a copy of the charges in writing, specifically stating the offenses which are charged. However, as our Supreme Court said in *Turk v. Franklin Special School District*, 640 S.W.2d 218 (1982)

> ". . . the technical nicety required in indictments is not necessary. The procedure prescribed by the statute is designed to insure the teacher a full hearing before the Board upon every issue under consideration by that body. To accomplish this the first essential is a notice sufficient in substance and form to fairly apprise the teacher of the charge against him and enable him to prepare his defense in advance of the hearing."

640 S.W.2d at 220.

Once a teacher has received a notice of charges, she is entitled to a hearing where she may plead her case, compel the appearance of witnesses by subpoena, examine them under oath, and cross-examine the witnesses against her. Tenn. Code. Ann. § 49-5-512. Mrs. Lannom does not claim that she was deprived of any of these rights.

Instead, her due process arguments focus on the difference between the charging language contained in Dr. Wise's letter of March 19, 1998 and the findings of the Board. The letter states that the "charge is justified by Mrs. Lannom's denial of, then subsequent admission to, taking tablets from a child's prescription bottle in the secretary's desk at the Hickman Elementary School Annex." But Mrs. Lannom argues that she never denied taking the tablets.

She explains Detective Postiglione's testimony to the contrary by asserting that he asked her if she took the Ritalin, and that she denied it because she knew the pills she took were not Ritalin. Her explanation sounds unlikely, particularly in view of the detective's testimony as to her change of demeanor after she was confronted with the photos from the video. In any case, the Board did not specifically find that she lied to the detective, but focused instead on the underlying conduct that led him to interview her.

Appellant concedes that she was given sufficient notice that she would have to defend herself against the charge of taking the tablets. But she claims that it was inequitable for the Board to impose the ultimate penalty of termination without proving every charge it chose to level against her, and that the notice was deficient because it did not warn her of that possibility.

We do not agree. The notice Mrs. Lannom received was sufficient to apprise her of the charges she would be required to defend, and of the possibility that she could be dismissed. Taking the tablets was clearly the primary offense she was charged with, and by far the most serious one. We do not fault the appellant for trying to elevate the importance of a secondary issue like whether or not she lied to the detective, in light of the fact that her primary transgression was captured on videotape. However, we are certain that the notice Mrs. Lannom and her attorneys received made them fully aware that she could lose her job for taking the pills.

# V. The Severity of the Punishment

The appellant emphasizes Mrs. Lannom's previously unblemished nineteen year career in special education, and argues that in light of that career, the punishment imposed for a single impulsive and foolish act was excessive, and was an arbitrary and capricious abuse of the Board's authority. She seeks to mitigate her offense by insisting that it is uncontested that she did not steal Ritalin, and that at worst, she stole four baby aspirin, which were worth less than a dollar. She also denies that she ever harbored the intention to steal Ritalin, and insists that she realized that the tablets were not Ritalin before she removed them from the bottle. This is somewhat at odds with the testimony of Detective Postiglione, who stated that Mrs. Lannom told him that she didn't realize the pills weren't Ritalin until she inspected them in the bathroom.

The caliber of a teaching career may be taken into account when determining the penalty for an offense caused by a lapse of judgment. *Turk v. Franklin Special School District*, 640 S.W.2d 218 (1982). However, the Board did not view Mrs. Lannom's offense as a minor one, nor do we. In the context of the concern felt in the school about previous disappearances of Ritalin, the taking of these pills was a highly irresponsible act. Though Mrs. Lannom claims that she knew the pills were not Ritalin, she admits that she was unable to determine what they actually were. Thus, for all she knew, she was taking prescription medications that a student needed. She then compounded her offense by destroying the evidence. Her conduct may not require dismissal, but it does not preclude it either.

In the end, the decision was for the school board to make, with the courts empowered to reverse that decision only if it could be shown to be

arbitrary or capricious.  We do not believe the appellant has made such a showing.

## VI.  A Dispute over Discovery

Prior to the final hearing in Chancery Court, Ms. Lannom served six discovery requests on the Board that would have required it, among other things, to produce the personnel files of other tenured teachers if they had been subject to disciplinary proceedings for misconduct, if they had been identified as substance abusers, or if they had resigned or retired while under suspicion of having committed thefts on school property.  The Board of Education responded by filing a motion for a protective order in the trial court.  After a hearing, the trial court granted the protective order.

Mrs. Lannom argues on appeal that the trial court's action was a violation of the Public Records Act, Tenn. Code. Ann. § 10-7-501, et seq., and that it prevented her from proving that the penalty imposed on her by the Board was arbitrary or capricious, because disproportionate when compared to the penalties imposed against other teachers for similar offenses. She relies on Tenn. Code. Ann. § 49-5-513(g) which reads,

> The cause shall stand for trial and shall be heard and determined at the earliest practical date, as one having precedence over other litigation, except suits involving state, county or municipal revenue.  The review of the court shall be limited to the written record of the hearing before the board and any evidence or exhibits submitted at such hearing.  Additional evidence or testimony shall not be admitted except as to establish arbitrary or capricious action or violation of statutory or constitutional rights by the board.

Without attempting to further delineate the scope that should be afforded to the final sentence of the above statute, we note that it does not invalidate the general principle that the writ of certiorari is not designed to afford a litigant a second hearing to substitute for one whose result was disappointing.

The writ is designed, rather, to allow the court to review the record for evidence of some fundamental illegality in the proceedings below. *See State v. Johnson*, 569 S.W.2d 808 (Tenn. 1978). The grant or denial of the writ is always within the sound discretion of the court. *Yokley v. State*, 632 S.W.2d 123 (Tenn. Ct. App. 1981).

The chancellor listened to arguments on both sides during the hearing on the motion for protective order, and found each of the discovery requests to be improper on the grounds or relevance, confidentiality, or privilege. Because she had not yet read the record, she did not make a conclusive statement as to whether or not the petitioner had enjoyed full discovery during the hearing before the Board of Education.

However, the record reveals that the Board gave Mrs. Lannom ample opportunity for discovery, and that it granted virtually every discovery request she made, including numerous requests for information under the Public Records Act. Because the Board could dedicate only one session per week to her case, her hearing unfolded at a leisurely pace. Mrs. Lannom was able to request whatever documents she deemed necessary to her defense after each session, and have the requests responded to before the next hearing date. All the evidence she deemed relevant was included in the record of the hearing.

Appellant argues that during the Board hearing, she did not request the personnel files now at issue, because she had no way of anticipating that the Board would decide to terminate her without conclusive proof that she lied to Detective Postiglione about taking the pills. But as we have indicated above, that argument is without merit.

**VII.**

-10-

The order of the trial court is affirmed.  Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion.  Tax the costs on appeal to the appellant, Pamela Lannom.


_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:


_____
WILLIAM C. KOCH, JR., JUDGE


_____
PATRICIA J. COTTRELL, JUDGE