# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 10, 2024

## STATE OF TENNESSEE v. WAYNE DARYL POTEE

**Appeal from the Circuit Court for Lincoln County**
**Nos. 15-CR-184, 15-CR-185, 15-CR-186, 15-CR-187, 16-CR-21**
**Forest A. Durard, Jr., Judge**

_____

### No. M2023-00179-CCA-R3-CD

_____

Defendant, Wayne Daryl Potee, pleaded guilty in case numbers 2015-CR-185 and 2015-CR-186 to one count of selling 0.5 grams or more of methamphetamine in a Drug-Free School Zone ("DFSZ") and one count of selling less than 0.5 grams of methamphetamine in a DFSZ. Defendant received an effective 15-year sentence to serve at 100 percent for his convictions. Defendant subsequently filed a motion for resentencing pursuant to Tennessee Code Annotated section 39-17-432(h)(1), which the trial court denied following two evidentiary hearings. Defendant appealed the trial court's decision. In his brief to this Court, Defendant acknowledges that he has no right of appeal under Tennessee Rule of Appellate Procedure 3, *see State v. Bobo*, 672 S.W.3d 299, 302 (Tenn. Crim. App. 2023). He nonetheless asserts that the trial court's ruling was fundamentally illegal and asks this Court to grant a writ of certiorari. Following a thorough review of the record and applicable law, we deny Defendant's request for a writ of certiorari and affirm the judgment of the trial court.

### On Certiorari; Judgment of the Circuit Court Affirmed

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and JILL BARTEE AYERS, JJ., joined.

Daniel A. Horwitz, Lindsay Smith, and Melissa K. Dix, Nashville, Tennessee, for the appellant, Wayne Daryl Potee.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Robert J. Carter, District Attorney General; and Amber Sandoval, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Guilty Pleas*

In February of 2016, Defendant pleaded guilty pursuant to a global plea agreement to sale of 0.5 grams or more of methamphetamine in a DFSZ in case number 2015-CR-185 and sale of less than 0.5 grams of methamphetamine in a DFSZ in case number 2015-CR-186.[1] At the plea acceptance hearing, the prosecutor stated that Defendant was one of a group of individuals being investigated between February and September 2015 for trafficking methamphetamine. Defendant was a "secondary involved individual[] that did some of the running and transporting" for others in the group. In case number 2015-CR-185, Lincoln County Sheriff's Office ("LCSO") officers utilized a confidential informant ("CI") to make a controlled buy of crystal meth from Defendant on June 8, 2015. Defendant arranged for the CI to make the purchase at Defendant's auto repair shop, which was located 350 feet away from the Ninth Grade Academy in Fayetteville. The CI paid Defendant $300 in exchange for a small baggie containing 2.76 grams of methamphetamine. In case number 2015-CR-186, Defendant arranged for the CI to make another purchase at Defendant's auto repair shop on July 8, 2015. The CI paid Defendant $100 in exchange for a small baggie containing .45 grams of methamphetamine.

Defendant agreed that the State's recitation of facts was accurate, and upon Defendant's acknowledgment that he understood his rights and agreed to waive them, the trial court accepted Defendant's guilty pleas. Defendant received an effective 15-year sentence to be served at 100 percent pursuant to the plea agreement.

## *Petition for Resentencing*

In May of 2022, Defendant filed a motion asking the trial court to resentence him in accordance with the 2020 amendments to the Drug-Free Zone Act ("DFZA"). Defendant's motion asserted that the interests of justice supported his resentencing without the DFZA enhancement. At a hearing on June 7, 2022, Defendant testified that he could not recall if there was a school in sight of the location of the drug sales or who arranged the location of the drug sales. He acknowledged that he received six write-ups while incarcerated, which he stated all occurred in 2020 after his mother died and he "just kind of gave up hope there for a little while." Defendant said his last disciplinary write-up was on December 28, 2020, and that he had been sober since February 7, 2021. Defendant

---

[1] Defendant also pleaded guilty to conspiracy to sell 0.5 grams or more of methamphetamine in case number 2015-CR-184, sale of less than 0.5 grams of methamphetamine in case number 2015-CR-187, and conspiracy to introduce contraband into a penal institution in case number 2016-CR-21. Because Defendant's motion seeking resentencing relates only to these two cases, we will limit our summary of the facts underlying Defendant's guilty pleas to these charges.

testified that he successfully completed the Cognitive Behavioral Intervention Program in 2017, but it consisted of "a bunch of repetitive stuff" and did not help with his sobriety. Defendant also successfully completed a carpentry course in 2019. He testified that upon his release, he planned to live with his father and work for A.J. Williams.

A.J. Williams testified that he owned a machine shop. He had known Defendant's family for 15 to 20 years and would be willing to hire Defendant to work full-time upon his release.

Defendant's father, Ronald Potee, testified that he would allow Defendant to live with him at his house in Meridianville, Alabama, for "as long as it takes to get on his feet." Mr. Potee stated that he would provide Defendant transportation to and from work.

LCSO Sergeant Mike Pitts investigated Defendant's case, which involved "a meth conspiracy" between several individuals, some of whom were prosecuted federally. Participants of the conspiracy transported "[m]ultiple ounces of methamphetamine" for distribution in Lincoln County. Sergeant Pitts recalled that the two drug sales for which Defendant was convicted that were not part of the conspiracy took place at Defendant's workplace, which was located within "387 or 397" feet of Ninth Grade Academy. Sergeant Pitts stated that the school was visible from the side of Defendant's shop. Sergeant Pitts said that Defendant chose the location for the transactions and denied that he lured Defendant into a school zone. Sergeant Pitts testified that while Defendant was incarcerated, he arranged for drugs to be left at the courthouse where he attempted to retrieve them on one of his court dates.

Vicky Farrar, a Court Specialist with the Tennessee Department of Correction, testified that on February 5, 2020, Defendant tested positive for amphetamine, buprenorphine, methamphetamine, and morphine. On May 18, 2020, he refused a drug test. On December 14, 2020, Defendant tested positive for amphetamine and methamphetamine. On May 25, 2021, he tested positive for amphetamine and buprenorphine. Defendant received a write-up on December 4, 2020, for possession or use of a cell phone or contraband. On December 22, 2020, Defendant had another positive drug screen, and he received a write-up for tampering with security equipment on December 26, 2020.

Defendant testified in rebuttal that the school was not visible from his shop and that there was a "concrete wall . . . 20 feet high" which obstructed the view. He testified that he "was aware" there was a school nearby, but he did not know the distance between the school and his shop.

In a written order entered on September 19, 2022, the trial court denied Defendant's motion for resentencing. The court found that Defendant failed to establish that he would have received a shorter sentence under the 2020 amendments because the offenses occurred within 500 feet of Ninth Grade Academy. The court also noted that Defendant's involvement in the conspiracy "spanned a number of months" and that he attempted to introduce contraband into a penal facility after his arrest. Considering the "interest of justice factors found in [subsection] (h)(1)(A) through (D)[,]" the trial court found that Defendant's criminal record and subsequent conviction, his behavior while incarcerated, the location of the drug sales within 500 feet of a school zone, and the length of his sentence pursuant to a plea agreement did not support resentencing.

The parties subsequently filed a joint motion to reopen the proof on Defendant's motion for resentencing,[2] which the trial court granted. A new hearing was held on December 6, 2022.

Dwight Williams testified that he had known Defendant for over 20 years and "never kn[ew] him to do any drugs." Mr. Williams testified that a "city building" was located between Defendant's shop and the school. He testified that "[t]he fence toward the school is a chain l[in]k fence," and there was "a block building in there, a block fence."

Defendant's sister, Kelly Bishop, testified she had a good relationship with Defendant before he started using drugs. She began to suspect he was using drugs about a year before his arrest, but she never suspected that he was selling drugs. Ms. Bishop maintained contact with Defendant while he was incarcerated. She testified that Defendant was in "a really bad depression" following their mother's death, but he had since become more hopeful. Ms. Bishop believed Defendant's punishment was "overkill," and she was willing to be a source of support for him upon his release.

Dakota Burchard was Defendant's cellmate at the Trousdale Turner Correctional Complex from June to November of 2022. Mr. Burchard testified that he had been "locked up the majority of [his] life" and had "never seen the stuff that [he saw] go on, the violence and drugs and overdoses" to the degree he saw happen there. He testified that murders and overdoses were common and drugs were easy to access in the prison. He believed Defendant was a good person.

---

[2] The joint motion indicates that there was a "miscommunication" about whether the State would oppose Defendant's motion for resentencing. In his brief to this Court, Defendant states that the "Assistant District Attorney lied about whether the Government would oppose [Defendant]'s motion before the first hearing." However, to support this claim, Defendant cites only to the trial court's second order denying his motion for resentencing, which makes no such finding.

Defense counsel called Sergeant Pitts to testify that he was not able to identify a specific vulnerable person who was harmed by Defendant's drug sales. He also agreed that a paid informant was involved in the transactions. Sergeant Pitts could not recall whether Defendant had other convictions or whether he was ever asked if he had an opinion about whether Defendant should be resentenced. Sergeant Pitts identified several photographs of the locations of the drug transactions that were admitted as a collective exhibit. Ms. Farrar also testified for the defense that Defendant had not acquired any additional write-ups since the first hearing.

The trial court again denied Defendant's motion in a written order entered on February 7, 2023. The order states that the court heard no additional proof that would persuade it to reach a different result from its first order denying resentencing. The court reiterated,

> [Defendant] was involved in drug trafficking over a number of months and was finally incarcerated for his activities; however, this did not stop him. While awaiting disposition of his cases he was charged and later convicted of conspiracy to introduce contraband into a penal institution. While imprisoned he has had a number of disciplinary infractions which preclude application for commutation by the Governor's criteria on two of the four qualifying questions (See Exhibit 8) with the most recent being in December 2020. The one factor weighing in [Defendant]'s favor is there were no actual vulnerable persons present. Given the circumstances, [Defendant] is not a candidate for resentencing.

Defendant filed a "Notice of Appeal" in this Court on the same day the trial court's order was entered.

*Analysis*

Defendant acknowledges that he has no right of appeal under Tennessee Rule of Appellate Procedure 3. In the recently published *State v. Bobo*, 672 S.W.3d 299, 302 (Tenn. Crim. App. 2023), this Court held that neither Tennessee Rule of Appellate Procedure 3 nor the recent amendments to Tennessee Code Annotated section 39-17-432(h) provides for an appeal as of right from the denial of a motion seeking resentencing under the DFZA. *See also State v. Billingsley*, No. E2022-01419-CCA-R3-CD, 2023 WL 4417531, at *6 (Tenn. Crim. App. July 10, 2023) (adopting *Bobo* and "similarly conclud[ing] that the [d]efendant in this case does not have a right to an appeal on this issue"), *perm. app. denied* (Tenn. Nov. 20, 2023); *cf. State v. Watson*, No. E2022-01321-CCA-R3-CD, 2023 WL 5925717, at *7 (Tenn. Crim. App. Sept. 12, 2023) (holding, by contrast, that Rule 3(b) allows an appeal when a defendant is *granted* a resentencing

because the resentencing will produce a new sentence with an amended final judgment), *no perm. app. filed*.

Anticipating that the State would argue this Court lacks jurisdiction under Tennessee Rule of Appellate Procedure 3(b), Defendant urges this Court to treat his notice of appeal as a petition for writ of certiorari. The State opposes a grant of certiorari, arguing that the trial court's ruling was not fundamentally illegal and that Defendant has not shown that the proceedings were inconsistent with essential legal requirements.

Although Defendant filed a uniform "Notice of Appeal" rather than a petition for writ of certiorari, both parties address the issue in their briefs to this Court. Therefore, we will treat Defendant's notice of appeal as a petition for writ of certiorari. *See Abdur'Rahman v. State*, 648 S.W.3d 178, 190 (Tenn. Crim. App. 2020) ("[E]ven if we were to determine that the State does not have an appeal as of right under [Tennessee] Rule [of Appellate Procedure] 3(c), this Court has the authority to treat the State's notice of appeal as a petition for a writ of certiorari.") (citing *State v. Adler*, 92 S.W.3d 397, 401 (Tenn. 2002), *superseded on other grounds by statute, as recognized in State v. Rowland*, 520 S.W.3d 542, 545 (Tenn. 2017); *State v. L.W.*, 350 S.W.3d 911, 916 (Tenn. 2011) (holding that "the failure to follow the procedural requirements of [T.C.A. §] 27-8-106 for petitions for writ of certiorari in civil cases did not deprive the Court of Criminal Appeals of jurisdiction to hear these appeals")).

The common law writ of certiorari lies "[w]here no appeal is given[.]" T.C.A. § 27-8-102(a)(2) (2023). The General Assembly codified the common law writ of certiorari in Tennessee Code Annotated section 27-8-101 (2000). *Adler*, 92 S.W.3d at 401. Section 27-8-101 provides:

> The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy.

The common law writ of certiorari is an "extraordinary judicial remedy," *State v. Lane*, 254 S.W.3d 349, 355 (Tenn. 2008), and may not be used "to inquire into the correctness of a judgment issued by a court with jurisdiction." *Adler*, 92 S.W.3d at 401 (citing *State v. Johnson*, 569 S.W.2d 808, 815 (Tenn. 1978)). Instead, the writ of certiorari is available "to correct '(1) fundamentally illegal rulings; (2) proceedings inconsistent with essential legal requirements; (3) proceedings that effectively deny a party his or her day in court; (4) decisions beyond the lower tribunal's authority; and (5) plain and palpable abuses of discretion.'" *Lane*, 254 S.W.3d at 355 (citation omitted). As our supreme court decided

in *Adler*, where there is "an allegation that the trial court acted without legal authority and because 'there is no other plain, speedy, or adequate remedy,'" certiorari review may be warranted. *Adler*, 92 S.W.3d at 401.

Defendant complains that the trial court misconstrued section 39-17-432(h)(1) and "failed to make a necessary finding 'that resentencing the defendant would not be in the interests of justice.'" T.C.A. § 39-17-432(h)(1). Defendant asserts that the trial court's "application [of the statute] to the facts of [Defendant]'s case" was fundamentally illegal and "demonstrated the trial court's 'failure to proceed according to the essential requirements of the law.'" (citing *State v. Johnson*, 569 S.W.2d 808, 815 (Tenn. 1978)).

In 2020, the General Assembly amended the DFZA to reduce the drug-free zone radius from 1,000 feet to 500 feet. *See* T.C.A. § 39-17-432(b)(1)(B) (2020). Additionally, the previous DFZA's requirements that a defendant be punished one classification higher, pay additional fines, and serve at least the minimum sentence for the defendant's appropriate range of sentence became discretionary. *See* T.C.A. § 39-17-432(b)(1), (b)(2), (c)(1) (2020). Finally, the 2020 amendments to the DFZA created a rebuttable presumption that a defendant was not required to serve the minimum sentence for the defendant's appropriate range of sentence at one hundred percent but provided that the presumption was overcome if the trial court found that the defendant's conduct "exposed vulnerable persons to the distractions and dangers that are incident to the occurrence of illegal drug activity." T.C.A. § 39-17-432(c)(2) (2020).

The 2020 amendments to the DFZA applied to offenses committed on or after September 1, 2020. Because the amendments were not retroactive, our legislature enacted Tennessee Code Annotated section 39-17-432(h). The new subsection (h), which became effective April 29, 2022, allows defendants sentenced for offenses committed before September 1, 2020, to file a motion for resentencing under the amended version of the DFZA. The new provision reads:

> [T]he court that imposed a sentence for an offense committed under this section that occurred prior to September 1, 2020, may, upon motion of the defendant or the district attorney general or the court's own motion, resentence the defendant pursuant to subsections (a)-(g). The court shall hold an evidentiary hearing on the motion, at which the defendant and district attorney general may present evidence. The defendant shall bear the burden of proof to show that the defendant would be sentenced to a shorter period of confinement under this section if the defendant's offense had occurred on or after September 1, 2020. The court shall not resentence the defendant if the new sentence would be greater than the sentence originally imposed or if the court finds that resentencing the defendant would not be in the interests of

justice. In determining whether a new sentence would be in the interests of justice, the court may consider:

(A) The defendant's criminal record, including subsequent criminal convictions;

(B) The defendant's behavior while incarcerated;

(C) The circumstances surrounding the offense, including, but not limited to, whether the conviction was entered into pursuant to a plea deal; and

(D) Any other factors the court deems relevant.

T.C.A. § 39-17-432(h)(1) (2022). The final section of the DFZA makes it clear that "subsection (h) does not require a court to reduce any sentence pursuant to this section." T.C.A. § 39-17-432(h)(4) (2022).

Despite Defendant's assertions that the trial court misapplied the revised statute to the facts of his case, the record does not reflect that the trial court's ruling was fundamentally illegal, that the proceedings were inconsistent with essential legal requirements, that Defendant was denied his day in court, that the trial court acted without authority, or that the trial court demonstrated a plain and palpable abuse of discretion. *See Lane*, 254 S.W.3d at 355. Defendant was afforded two evidentiary hearings, after which the trial court considered and weighed the statutory factors and determined that the interests of justice did not support resentencing Defendant. We, therefore, decline to extend the "extraordinary judicial remedy" of a writ of certiorari, *see id.*, and we again emphasize that the writ may not be used "to inquire into the correctness of a judgment issued by a court with jurisdiction." *Adler*, 92 S.W.3d at 401 (citing *Johnson*, 569 S.W.2d at 815). Subsection (h)(4) explicitly provides that the revised statute "does not require a court to reduce any sentence pursuant to this section." T.C.A. § 39-17-432 (h)(4) (2022).

CONCLUSION

We deny the writ of certiorari and affirm the trial court's judgment.

_____
TIMOTHY L. EASTER, JUDGE